Johanson, J.
¶1 — The State appeals a superior court order reversing Ascension Salgado-Mendoza’s district court jury trial conviction for driving under the influence (DUI).
*238 The State argues that the superior court erred when it reversed the district court’s denial of Salgado-Mendoza’s motion to exclude a state toxicologist’s testimony for governmental mismanagement under CrRLJ 8.3(b) based on the State’s failure to comply with CrRLJ 4.7(a). Because the prosecutor failed to take reasonable steps to ensure the timely disclosure of the testifying toxicologist’s name under CrRLJ 4.7(d) and this failure forced Salgado-Mendoza to choose between his speedy trial rights and going to trial fully prepared, we hold that the district court erred when it denied Salgado-Mendoza’s motion to exclude the toxicologist’s testimony. We affirm the superior court’s reversal of Salgado-Mendoza’s district court conviction and remand to the district court for a new trial.
FACTS
I. Background
¶2 On the evening of August 11, 2012, a Washington State Patrol trooper observed the vehicle Salgado-Mendoza was driving struggling to stay in its lane of travel for about five miles. The trooper stopped the vehicle.
¶3 While talking to Salgado-Mendoza, the trooper noticed a strong odor of intoxicants coming from the truck and observed that Salgado-Mendoza had bloodshot, watery, droopy eyes and was responding to the trooper’s requests slowly and lethargically. Salgado-Mendoza admitted that he had recently consumed two beers. When Salgado-Mendoza started to get out of the vehicle, it started to roll backward and the trooper asked him to apply the brakes; Salgado-Mendoza’s response was delayed, and he did not appear to notice that his vehicle was moving. Once outside the vehicle, the trooper could smell alcohol on Salgado-Mendoza’s breath, and Salgado-Mendoza performed poorly on the voluntary field sobriety tests.
¶4 The trooper arrested Salgado-Mendoza for DUI. After his arrest, Salgado-Mendoza voluntarily submitted to *239 breath tests. Two breath samples showed that his blood alcohol concentration was 0.103 and 0.104.
II. District Court Proceedings
¶5 Several months before his district court trial date on the DUI charge, Salgado-Mendoza requested that the State disclose information about any and all expert witnesses the State intended to call at trial. In December 2012, the State filed a witness list providing the names of nine possible Washington State Patrol Crime Laboratory toxicologists, one of whom would testify at trial.[1]
¶6 On April 24, 2013, about two weeks before the May 9 trial date, Salgado-Mendoza filed a supplemental discovery demand requesting, in part, that the State disclose the names and other relevant information for all expert witnesses the State intended to call. The State apparently attempted to contact the toxicology lab by phone to narrow the list of possible toxicology witnesses, but was unsuccessful.
¶7 On May 6, three days before trial, Salgado-Mendoza filed a motion requesting that the district court dismiss the case or exclude the toxicologist’s evidence based on governmental misconduct. In a supporting declaration, defense counsel asserted that despite numerous defense requests, the State had failed to disclose the name of the toxicologist who would testify and, instead, had provided a list of eight individuals, one of whom would testify.
¶8 Defense counsel further asserted that (1) the toxicologist was an indispensable witness because the technician prepared the “simulator solution” used in the breath test in *240 this case and (2) the State’s failure to disclose which potential witness would testify was unduly burdensome because the defense would have to prepare to cross-examine eight individuals. Clerk’s Papers (CP) at 40. Defense counsel also stated that even if the State asserted it had no control over the toxicology lab, the State’s inability to identify the specific person or persons who would testify a week before the trial date was “simply mismanagement of human resources.” CP at 41.
¶9 On May 8, the afternoon before trial, the State received a list of three toxicologists, one of whom might testify the next day. The State provided this list to Salgado-Mendoza.
¶10 When the parties appeared for trial on May 9, Salgado-Mendoza argued his May 6 motion and asked the district court to exclude the toxicologist’s testimony or to dismiss the DUI charge because the State had still not disclosed which toxicologist would testify. Salgado-Mendoza also suggested that extensive background checks were necessary in light of a recent “scandal” at the toxicology lab and the possibility that some of the proposed witnesses may have been involved in a related “cover up.” Report of Proceedings (RP) (May 9, 2013) at 23. He again characterized the State’s failure to disclose a specific toxicology witness as governmental mismanagement.
¶11 During argument on this motion, the State disclosed that it had finally learned that Chris Johnston would be testifying. The State then argued that it was the defense’s mismanagement that created the issue, rather than the late disclosure, because the State had provided a list of eight possible witnesses in time for the defense to prepare for trial. It also asserted that (1) the toxicology lab was overworked and understaffed, (2) the State had done its “due diligence” and had requested a shorter list earlier, but the lab was unable to comply, (3) the State was not required to call every witness on its witness list, and (4) it provided the defense with the name of the toxicologist who would testify *241 as soon as that information was available. RP (May 9,2013) at 31.
¶12 Agreeing that the toxicologist witnesses were “fungible” and that having to prepare for the eight potential witnesses was not unduly burdensome or prejudicial to the defense, the district court denied Salgado-Mendoza’s motion. RP (May 9, 2013) at 22. The district court also commented that much of the problem was caused by the realities of lack of funding rather than governmental mismanagement. After the district court ruled, defense counsel stated that although he would normally seek a continuance under these circumstances, Salgado-Mendoza did not want to waive his speedy trial rights and it would be very difficult to reschedule the defense expert.
¶13 The trial began, and Johnston testified that day. During the trial, the district court also granted the State’s motion to exclude a portion of a defense expert’s testimony concerning the breath-alcohol testing machine. The jury found Salgado-Mendoza guilty of DUI.
III. Appeal to Superior Court
¶14 Salgado-Mendoza appealed his conviction to the superior court. Finding that the district court had abused its discretion by (1) not excluding the toxicologist’s testimony due to the State’s violation of the discovery rules and mismanagement of the case in failing to disclose its witness prior to trial and (2) excluding the defense expert’s testimony about the breath-alcohol testing machine, the superior court reversed the DUI conviction and remanded the matter for a new trial.
¶15 As to the toxicologist’s testimony, the superior court stated in its memorandum opinion and order that (1) the lab’s limited resources and busy schedule did not justify the State’s failure to comply with the discovery rules and (2) dismissal would not have been an appropriate sanction because excluding the evidence would eliminate any pos *242 sible prejudice caused by the governmental misconduct. The superior court also rejected the State’s argument that the possible witnesses were interchangeable and noted that a continuance would not have been a reasonable option because “it appear [ed] likely that the same thing would have happened if a continuance was granted, i.e. the State would have provided 8 names, narrowed it down to 3 names the day before trial, and have one of the three show up for the new trial date.” CP at 59. And in response to the State’s argument that it was not required to call all of the witnesses it had disclosed, the superior court rejected this argument because CrRLJ 4.7(a)( l)(i) required the State to disclose the witnesses it intended to call and the State never intended to call all eight witnesses.
IV. Motion for Discretionary Review
¶16 The State moved for discretionary review of the superior court’s decisions on the toxicologist’s testimony and the defense expert’s testimony. We granted review in part, but we limited our review to “whether state toxicologist witnesses are within the control of the prosecution’s staff, . . . and the larger issue [of] whether the superior court’s decision regarding the [suppression of] the toxicologist’s testimony is correct.” Ruling Granting Mot. for Discr. Review at 5 (July 10, 2014).
ANALYSIS
¶17 The State argues that the superior court’s decision that the State had engaged in governmental misconduct by violating the discovery rules is erroneous. It contends that the prosecutor was not required to disclose which toxicologist would testify until the day of trial because that information was not yet within her knowledge, possession, or control, as required under CrRLJ 4.7(a)(4). The State further contends that this information was under the state toxicologist’s full control and that the toxicologist would not *243 respond to subpoenas until the trial date was certain. We hold that the prosecutor violated the discovery rules by failing to take reasonable steps to obtain the name of its witness in a timely manner as required under CrRLJ 4.7(d) and that this in turn amounted to governmental misconduct under CrRLJ 8.3(b).[2] We further hold that this misconduct was prejudicial and that the exclusion of the toxicologist’s testimony was the proper remedy.[3]
¶18 As a preliminary matter, we note that regardless of our decision, this case will be remanded for a new trial based on the district court’s error in excluding portions of the defense expert witness’s testimony because we did not accept discretionary review of that issue. We reach the issue of the exclusion of the toxicologist’s testimony because it is an issue of public importance and because it is an issue that could arise again on remand.
I. Legal Standards
 ¶19 We review a trial court’s CrRLJ 8.3(b)[4] ruling for abuse of discretion. State v. Michielli, 132 Wn.2d 229, 240, 937 P.2d 587 (1997); State v. Brooks, 149 Wn. App. 373, 384, 203 P.3d 397 (2009). A trial court abuses its discretion when its decision is manifestly unreasonable or based on *244 untenable grounds. Michielli, 132 Wn.2d at 240; Brooks, 149 Wn. App. at 384.
 ¶20 Relief under CrRLJ 8.3(b) “requires a showing of arbitrary action or governmental misconduct, but the governmental misconduct need not be of an evil or dishonest nature; simple mismanagement is enough.” Brooks, 149 Wn. App. at 384 (citing State v. Dailey, 93 Wn.2d 454, 457, 610 P.2d 357 (1980)). Violations of obligations under the discovery rules can support a finding of governmental misconduct. See Brooks, 149 Wn. App. at 375-76.
¶21 The defendant must also show “that such action prejudiced his right to a fair trial.” Brooks, 149 Wn. App. at 384 (citing Michielli, 132 Wn.2d at 240). “ ‘Such prejudice includes the right to a speedy trial and the right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense.’ ” Brooks, 149 Wn. App. at 384 (internal quotation marks omitted) (quoting Michielli, 132 Wn.2d at 240).
II. Violation of Discovery Obligations
¶22 CrRLJ 4.7(a), which governs criminal discovery in courts of limited jurisdiction, sets out the prosecutor’s obligations under the discovery rules. CrRLJ 4.7(a)(1) provides in part,[5]
Except as otherwise provided by protective orders or as to matters not subject to disclosure, the prosecuting authority shall, upon written demand, disclose to the defendant the following material and information within his or her possession or control concerning:
(i) the names and addresses of persons whom the prosecuting authority intends to call as witnesses at the hearing or *245 trial, together with any written or recorded statements and the substance of any oral statements of such witnesses; [and]

(vii) any expert witnesses whom the prosecuting authority will call at the hearing or trial, the subject of their testimony, and any reports relating to the subject of their testimony that they have submitted to the prosecuting authority.
(Emphasis added.) CrRLJ 4.7(a)(4) further provides that this obligation “is limited to material and information within the actual knowledge, possession, or control of members of [the prosecuting authority’s] staff.”[6]
¶23 We assume without deciding that the prosecutor’s actions are not in violation of CrRLJ 4.7(a) because the record shows that the prosecutor did not have knowledge of the name of the person who ultimately testified until the day of trial and, arguably, did not have direct control over the toxicology lab.[7] But regardless of whether the State had control, the State had a further obligation to attempt to acquire and then disclose that information from the toxicology lab under CrRLJ 4.7(d), which provides,[8]
Upon defendant’s request and designation of material or information in the knowledge, possession or control of other persons which would be discoverable if in the knowledge, possession or control of the prosecuting authority, the prosecuting authority shall attempt to cause such material or information to be made available to the defendant. If the prosecuting authority’s efforts *246 are unsuccessful and if such material or persons are subject to the jurisdiction of the court, the court shall issue suitable subpoenas or orders to cause such material to be made available to the defendant.
If the prosecutor’s attempts to obtain this information failed, the district court should have been notified in a timely manner so it could issue the appropriate orders to accomplish this disclosure in time to allow the defense to adequately prepare for trial. CrRLJ 4.7(d). Here, the State, as the party requesting the information from the third party, was in the best position to notify the district court in a timely manner.
¶24 Our Supreme Court addressed a similar situation in State v. Blackwell, 120 Wn.2d 822, 845 P.2d 1017 (1993).[9] In that case, the trial court ordered the State to produce personnel files of two Tacoma police officers. Blackwell, 120 Wn.2d at 824. After the Tacoma Police Department and the Tacoma City Attorney’s Office refused to produce the files upon the prosecutor’s request, the prosecutor filed a motion to reconsider the previous discovery order under CrR 4.7(d). Blackwell, 120 Wn.2d at 826-27. In this motion, the State notified the trial court and defense counsel that the requests for these materials had been denied, asserted that it could not produce records that were not under the prosecutor’s control, and suggested that the court issue a subpoena duces tecum. Blackwell, 120 Wn.2d at 825, 827.
¶25 The trial court found that the prosecutor had not made sufficient efforts to produce the documents and ordered the State to produce the documents. Blackwell, 120 Wn.2d at 827. The defendant, however, declined to request a subpoena, asserting that it would be futile given the response the prosecutor had already received. Blackwell, 120 Wn.2d at 827. The trial court later granted a defense *247 motion to dismiss the case for mismanagement under CrR 8.3(b). On appeal, our Supreme Court determined that the State’s actions did not warrant dismissal for governmental mismanagement because, in part, the prosecutor’s actions, which included trying to obtain the records and its CrR 4.7(d) motion, were “reasonable.” Blackwell, 120 Wn.2d at 832.
¶26 To the extent the State relies on Blackwell for its argument that CrRLJ 4.7(a)(1) does not apply because the witness information was not within its possession or control, that argument has some merit because Blackwell suggests that the prosecutor may not have possession or control of materials in the custody of another agency. But as Salgado-Mendoza recognizes, it is CrRLJ 4.7(d), not CrRLJ 4.7(a)(1), that guides our analysis here. And unlike in Blackwell, the record here does not show that the State made a reasonable effort to obtain the testifying toxicologist’s name from the toxicology lab in a timely manner—at most, the record shows that the State contacted the lab and talked to someone in the lab about narrowing the witness list.
¶27 CrRLJ 4.7(d) clearly requires the prosecutor to obtain discoverable material or information in another party’s possession or control at the defendant’s request. Although it is the court’s responsibility to “issue suitable subpoenas or orders to cause such material to be made available to the defendant” if the prosecutor’s attempts to obtain the material or information are unsuccessful, the court cannot do so unless the prosecutor first advises the court that its efforts are unsuccessful. CrRLJ 4.7(d). Here, unlike in Blackwell, the record shows that the prosecutor never attempted to seek any assistance from the district court under CrRLJ 4.7(d). Instead, it acquiesced to the toxicology lab’s refusal *248 to supply the name of the toxicologist who would testify, placing a significant burden on the defense.[10]
¶28 The State’s approach is particularly concerning because the prosecutor acknowledged that refusing to disclose the particular toxicologist who would testify until immediately before trial is the toxicology lab’s common practice.[11] Although we understand that the prosecutor’s office is not directly in charge of the toxicology lab, the prosecutor had at her disposal a mechanism for ensuring compliance from the toxicology lab, namely bringing a CrRLJ 4.7(d) motion and asking the trial court to issue a subpoena. The prosecutor’s failure to use the tools at her disposal to provide the defense with a specific witness’s name before the date of trial is not reasonable. And her failure to do so defeats the purpose of the discovery rules, which are, in part, intended to afford an opportunity to prepare for effective cross-examination. State v. Yates, 111 Wn.2d 793, 797-98, 765 P.2d 291 (1988).
¶29 Furthermore, without our ability to impose sanctions, the State would have no incentive to remedy the problem to the extent it is caused by lack of resources being allocated to the toxicology lab. See State v. Wake, 56 Wn. App. 472, 475-76, 783 P.2d 1131 (1989) (unavailability of toxicologist witness due to congestion at state crime lab should not be sufficient to allow continuances that exceed the speedy trial period because the State would then have no incentive to remedy the problem). Accordingly, we agree with the superior court that the district court abused its *249 discretion in finding that the prosecutor had not violated the discovery rules.[12]
¶30 As to prejudice, the record shows that defense counsel’s preference was to request a continuance to allow him to prepare to cross-examine Johnston, but defense counsel did not request a continuance because Salgado-Mendoza did not want to forgo his speedy trial rights.[13] Thus, the record shows that the delayed disclosure of the toxicologist witness required Salgado-Mendoza to choose between going to trial with adequately prepared counsel and his speedy trial rights. That counsel could have theoretically prepared by investigating nine potential witnesses, eight of whom would not testify, placed an unfair burden on the defense. This is sufficient to establish prejudice.[14] See Brooks, 149 Wn. App. at 384 (prejudice can be established if the defendant is forced to choose between *250 right to speedy trial and going to trial unprepared). Accordingly, we hold, as the superior court did, that the district court erred when it denied Salgado-Mendoza’s motion to exclude the toxicologist’s testimony.
III. Remedy
¶31 We must decide whether dismissal or exclusion of the toxicologist’s testimony was the proper remedy here. “[T]he question of whether dismissal is an appropriate remedy is a fact-specific determination that must be resolved on a case-by-case basis.” State v. Sherman, 59 Wn. App. 763, 770-71, 801 P.2d 274 (1990).
 ¶32 After finding governmental misconduct, the trial court may dismiss the case, but it must first consider lesser remedial action. City of Seattle v. Holifield, 170 Wn.2d 230, 238-39, 240 P.3d 1162 (2010); see also State v. McReynolds, 104 Wn. App. 560, 579, 17 P.3d 608 (2000). “[Suppression presents an appropriate, less severe remedy than dismissal under CrRLJ 8.3(b)” and is preferable when suppression of the evidence will eliminate the potential prejudice caused by the misconduct. Holifield, 170 Wn.2d at 239; McReynolds, 104 Wn. App. at 579.
¶33 Because the governmental misconduct at issue here was discovery related, the test applied to discovery violations is instructive. See State v. Hutchinson, 135 Wn.2d 863, 882-83, 959 P.2d 1061 (1998). In determining whether exclusion or suppression of evidence is justified, courts consider the following factors:
(1) [T]he effectiveness of less severe sanctions; (2) the impact of witness preclusion on the evidence at trial and the outcome of the case; (3) the extent to which the [party opposing admission of the evidence] will be surprised or prejudiced by the witness’s testimony; and (4) whether the violation was willful or in bad faith.
Hutchinson, 135 Wn.2d at 883.
*251 ¶34 Here, the disclosure of the witness’s name on the day of trial denied the defense the opportunity to fully investigate the toxicology lab witness. The less severe sanction of a continuance could have allowed the defense additional time to prepare. But it would have required Salgado-Mendoza to waive his speedy trial rights, which he did not want to do. And it was also likely that this less severe sanction would not have been effective because the toxicology lab would have once again not disclosed the name of the witness until immediately before trial.
¶35 Further, in this instance, the impact of witness preclusion would not have been fatal to the State’s case. The suppression of the toxicologist’s testimony would have likely resulted in the exclusion of the blood alcohol test results. But the State had considerable evidence of intoxication apart from the breath tests, specifically the arresting trooper’s observations of Salgado-Mendoza’s driving and signs of intoxication and Salgado-Mendoza’s performance on the field sobriety tests.
¶36 Salgado-Mendoza would not likely have been surprised or prejudiced by the witness’s testimony. But the issue here was not a matter of surprise in regard to the nature of the proposed testimony—it was the interference with defense counsel’s ability to investigate the witness for possible bias or credibility issues, particularly in light of recent incidents involving the toxicology laboratory. This record is inadequate for us to further examine this factor. Finally, it does not appear that the State was acting in bad faith.
¶37 These four factors, as a whole, would not likely have justified dismissal of the case, but suppression was a reasonable alternative to dismissal. This alternative would have both protected Salgado-Mendoza’s speedy trial rights and his right to be represented by fully prepared counsel and yet not have required dismissal of the State’s case for *252 lack of evidence. This is a reasonable balance under these circumstances.
¶38 We affirm the superior court’s reversal of Salgado-Mendoza’s district court conviction and remand to the district court for a new trial. On retrial, the State should ensure that it provides the name and address of the person or persons it intends to call at trial or comply with CrRLJ 4.7(d) when preparing for the new trial.
Melnick, J., concurs.

 Although the State asserted in its motion for discretionary review that it had subpoenaed the state toxicologist who had tested the standard solution used in Salgado-Mendoza’s breath test and the toxicology lab did not reply to that subpoena, the State does not cite to the record and we can find no reference to the State subpoenaing any witness in the record before us. Because the record does not support the State’s assertion that it had subpoenaed the toxicology lab, we do not consider this fact.

 When reviewing an appeal of a district court decision followed by an appeal to the superior court, we review the district court’s decision to determine whether that court committed any errors of law, accepting any factual determinations that are supported by substantial evidence and reviewing alleged errors of law de novo. RALJ 9.1; State v. Jim, 156 Wn. App. 39, 41, 230 P.3d 1080 (2010), aff’d, 173 Wn.2d 672, 273 P.3d 434 (2012).

 We disagree with the dissent (dissent at 252, 259-60) that our holding imposes an “unprecedented discovery requirement’’ and that we pass judgment on the toxicology lab’s hiring practices. We do not. Instead, CrRLJ 4.7 has always required the State to disclose the witnesses it intends to call at trial, and our holding today addresses the State’s discovery obligations and not the hiring practices of the lab.

 This rule is identical to CrR 8.3(b). Compare CrRLJ 8.3(b), with CrR 8.3(b). Although the cases we cite in this section discuss CrR 8.3(b), they still apply here because the two rules are identical. See City of Seattle v. Holifield, 170 Wn.2d 230, 238, 240 P.3d 1162 (2010) (applying case law addressing CrR 8.3(b) when addressing an issue related to CrRLJ 8.3(b)).

 This rule is the same as CrR 4.7(a)(1) except that CrR 4.7(a)(1) refers to the “prosecuting attorney’’ rather than the “prosecuting authority’’ and does not require a “written demand’’ from the defendant. Compare CrR 4.7(a)(1), with CrRLJ 4.7(a)(1). The State does not argue that Salgado-Mendoza did not make the proper written demand.

 This rule is the same as CrR 4.7(a)(4) except that CrR 4.7(a)(4) refers to the “prosecuting attorney’’ rather than the “prosecuting authority.’’ Compare CrR 4.7(a)(4), with CrRLJ 4.7(a)(4).

 But see State v. Woods, 143 Wn.2d 561, 583, 23 P.3d 1046 (2001) (stating that although crime laboratory’s delay in completing deoxyribonucleic acid (DNA) testing could not be attributed to the State’s counsel, “it is clear that conduct of employees of the crime laboratory, which is lacking in due diligence, constitutes actions on the part of the State. See State v. Wake, 56 Wn. App. 472, 475, 783 P.2d 1131 (1989) (observing that actions of the employees of crime lab are considered actions of the State)’’).

 This rule is the same as CrR 4.7(d) except that CrR 4.7(d) refers to the “prosecuting attorney’’ rather than the “prosecuting authority.’’ Compare CrR 4.7(d), with CrRLJ 4.7(d).

 Although Blackwell discusses CrR 4.7(d) rather than CrRLJ 4.7(d), the case is still relevant because these rules are substantially the same.

 The State also cites Brooks for the premise that the State did not have possession or control of the witness information. Brooks is not helpful to the State because, although it does not directly apply CrR 4.7(d), it also emphasizes that the State must put forth sufficient evidence to satisfy CrR 4.7(a) in order to avoid discovery sanctions. 149 Wn. App. at 385-86.

 The dissent argues that the State disclosed “all potential’’ witnesses to the defense. Dissent at 259. That is the crux of this appeal—whether the disclosure of “all potential’’ witnesses satisfies the State’s burden to disclose witnesses it intends to call at trial. The State intended to call only one toxicologist to testify, and the State admits it did not disclose the name of the testifying toxicologist until the morning of trial.

 To the extent the State’s arguments can also be construed as asserting that it complied with CrRLJ 4.7(a)(1)(i) because the toxicologist who testified was among the nine possible witnesses the State disclosed several months before trial, we also reject that argument. As the superior court noted, the rule requires the State to disclose the witnesses it intends to call as a witness, and the State clearly had no intention of calling all nine of these witnesses. CrRLJ 4.7(a)(1)(i). We hold that placing the burden of preparing to cross-examine eight additional witnesses who will not appear at trial is not a reasonable burden to place on the defense, particularly when the discovery rules also contain a mechanism for requiring a more specific answer from the toxicology lab.

 Defense counsel also stated that it would likely be difficult to reschedule the defense expert witness.

 The dissent asserts that to show that he was prejudiced by having to choose between his speedy trial rights and going forward with unprepared counsel, Salgado-Mendoza must prove by a preponderance of the evidence that the State’s delay interjected “ ‘new facts’ ” into the case that forced him to choose between two constitutional rights. Dissent at 260 (quoting State v. Price, 94 Wn.2d 810, 814, 620 P.2d 994 (1980); Woods, 143 Wn.2d at 583-84; and citing Michielli, 132 Wn.2d at 244-45). But the cases the dissent cites involved either the denial of a motion to dismiss or the dismissal of charges, not the lesser sanction of suppression that is at issue here. Woods, 143 Wn.2d at 585; Michielli, 132 Wn.2d at 239, 243-45; Price, 94 Wn.2d at 813. And in one of these cases, Woods, our Supreme Court suggests that a different standard would apply when the defendant is not seeking dismissal. 143 Wn.2d at 585 (addressing late disclosure of DNA evidence, commenting that the trial court could have imposed sanctions other than dismissal under CrR 4.7, but noting that such lesser sanctions were never requested). Furthermore, asking Salgado-Mendoza to prove to the trial court that the failure to timely disclose the specific witness delayed discovery of new facts *250 before counsel had the opportunity to further investigate the designated witness would be asking Salgado-Mendoza to perform an impossible task.