# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51930-5-II |
| Respondent, | |
| v. | |
| DHENA RAY ALBERT, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. —Dhena Albert appeals her convictions for possession with intent to deliver a controlled substance—methamphetamine, and unlawful possession of a firearm in the first degree.[1] The Vancouver Police Department obtained information from a confidential, reliable informant (CRI) about Albert's sale of methamphetamine and used the CRI to arrange a controlled buy of methamphetamine from Albert at her residence between August 16 and 18, 2017. The police department then obtained a search warrant and seized evidence from Albert's residence, including a surveillance device and a handgun with a loaded magazine in a safe.

The State charged Albert with possession with intent to deliver a controlled substance—methamphetamine—and unlawful possession of a firearm in the first degree, and a third charge that was later dropped. Pretrial, Albert filed a motion for a *Franks*[2] hearing and a motion for a trial continuance to view the surveillance device seized by the police. The court denied these

---

[1] Albert had prior felony convictions and could not possess a firearm.

[2] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

motions. A jury found Albert guilty of both charges. Albert filed a post-trial motion for a new trial and/or arrest of the judgment, which the court denied. Based on a pending federal charge, and after Albert filed a motion for an appeal bond, the court set bail at four million dollars.

Albert argues that the trial court erred by denying her pretrial motion for a *Franks* hearing and her motion for a continuance. She also argues that the trial court erred by denying her motion to suppress the evidence seized during the search, denying her motion for a new trial or alternatively, to arrest judgment, and setting her appeal bond at four million dollars.

We hold that the trial court did not err by denying Albert's request for a *Franks* hearing because she failed to meet her burden of proof for a *Franks* hearing, and the trial court did not err by denying Albert's motion for a continuance related to the surveillance device. We decline to decide the remainder of Albert's assignments of error because she either failed to adequately preserve these issues or failed to adequately brief them. Thus, we affirm the trial court's orders and Albert's convictions.

## FACTS

### I. BACKGROUND INFORMATION

The Vancouver Police Department obtained and executed a search warrant on August 25, 2017, for an apartment in Vancouver where Albert allegedly resided. The warrant was based on the affidavit by Vancouver Police Detective Chadd Nolan. In his affidavit, Detective Nolan described his reason to believe that two individuals, including Albert, were selling methamphetamine out of the residence at that location. His belief came from information from a CRI. This CRI informed the police that he or she knew that Albert sold methamphetamine from her residence. The CRI positively identified Albert from a photograph and provided substantial

information about Albert. The CRI described the way that Albert communicates with her customers, the way that she measures the methamphetamine for sale, and that the CRI had previously purchased methamphetamine from Albert on numerous occasions using cash. Detective Nolan searched Albert's driver's license and discovered that her address matched the address given by the CRI.

Based on this information, Detective Nolan set up a controlled buy with the CRI, whereby the CRI would buy methamphetamine from Albert under Detective Nolan's supervision. Detective Nolan stated that the controlled buy occurred between August 16 and August 18, 2017. Prior to the purchase, Detective Nolan thoroughly searched the CRI for any controlled substances and provided the CRI with prerecorded currency with which to purchase the methamphetamine. The officers watched the CRI as the CRI entered Albert's residence, and they continued to watch the residence until the CRI left. After the CRI left the residence, the CRI met the officers at a predetermined location.

The CRI presented Detective Nolan with a substance that Detective Nolan recognized as methamphetamine. The substance was field tested and tested positive for methamphetamine. The CRI informed Detective Nolan that Albert had a safe where she kept her methamphetamine and money. The CRI also informed Detective Nolan that Albert had pipes commonly used for smoking methamphetamine, a scale, and packaging material. The police then obtained a search warrant for Albert's residence, and during the search, the police found a handgun with a loaded magazine in a safe. They seized the gun, drug evidence, and Albert's cell phone. Albert has a prior conviction for a serious offense and was not lawfully allowed to possess a firearm.

The CRI cooperated with the Vancouver Police Department in exchange for "favorable consideration on a criminal charge." Clerk's Papers (CP) at 101. Detective Nolan was forthcoming in his affidavit about the CRI's history with drug abuse and prior criminal history.

The State charged Albert on August 29, 2017, with (1) one count of possession of a controlled substance with intent to deliver—methamphetamine, with enhancements for being within 1000 feet of a school bus route, while armed with a firearm, and it being a major violation of the Uniform Controlled Substances Act,[3] (2) one count of unlawful possession of a firearm in the first degree,[4] and a third charge which was later dismissed.

## II. PRETRIAL MOTIONS

### A. MOTION FOR A *FRANKS* HEARING AND RELATED MOTIONS

Pretrial, Albert filed a motion for a *Franks*[5] hearing, a supporting declaration, and a summary of her whereabouts and cellphone usage on the days of the alleged controlled buy by the CRI. Albert also filed a motion to seal her declaration and a motion to obtain sealed records documenting the CRI's allegations. Albert argued that the affidavit for the search warrant was unreliable because "the affiant does not give a date or time" that the CRI bought the methamphetamine from Albert, the affidavit does not say who observed the controlled buy, and Albert was not at her residence for a substantial period of time between August 16 to August 18, 2017.

---

[3] Ch. 69.50 RCW.

[4] RCW 9.41.040(1)(a).

[5] *Franks*, 438 U.S. 154.

Albert's counsel informed the trial court that he had Albert's cell phone data, including her text messages, extracted with the assistance of a private investigator to establish her whereabouts during the three-day period the CRI had bought from her. From this information, Albert's counsel determined that Albert was not at home for substantial periods of time during that time period based on the exhibits he had prepared and attached to the motion. When the court asked Albert's counsel whether he was arguing that the affiant, Detective Nolan, either lied or recklessly disregarded the truth, Albert's counsel stated, "Whether it's his reckless disregard of the truth or the informant's, I'm not sure that line is that bright." Verbatim Report of Proceedings (VRP) at 33.

The trial court found that Albert did not meet her preliminary burden of proof for a *Franks* hearing.

> There isn't anything in any of these affidavits which would allow the [c]ourt to find that the officer had some information which indicated the [CRI] is not telling . . . the truth about what happened during this controlled buy, and having that information [Detective Nolan] either disregarded it, [or] intentionally omit it, or having the information he [didn't] care whether it's true or not . . . . The defendant has to show . . . by a preponderance of the evidence that the affiant either intentionally misrepresented something or recklessly disregarding the truth. So, the focus was not what the affiant knew at the time they did the affidavit, and I have nothing in this information that would allow me to find that they had anything other than what they put in the affidavit.

VRP at 37-38 (internal quotation marks omitted). The court denied Albert's motions for a *Franks* hearing, for disclosure of the CRI and the logs and records of the CRI, and to seal her declaration, but it granted Albert's motion for the return of the surveillance device.

B.  MOTIONS TO SUPPRESS VIDEO DATA FROM SURVEILLANCE DEVICE AND FOR A CONTINUANCE

Albert also filed a pretrial motion to suppress the video from the surveillance device, which was seized during the execution of the search warrant.  She also filed a motion for a continuance to view the surveillance device, believing it may contain exculpatory evidence confirming that she was not at home for substantial periods of time during the three-day period of the controlled buy. The court denied the motion for a continuance, stating, "I haven't heard that there is in fact any exculpatory evidence, just the possibility that there might be.  There ha[s] been ample time to try to develop the things that are suggested."  VRP at 44.  Trial began on May 7, 2018. On May 8, the State informed Albert that she could pick up the surveillance device and review the surveillance device.

C.  TRIAL COURT RULING-USE OF SURVEILLANCE DEVICE VIDEO DATA IN REBUTTAL

During trial, the officers were finally able to gain access to the data contained in the surveillance device but only after the State had rested its case.  Once they did gain access by using special software, the video data showed Albert sitting in her kitchen on August 22, 2017, three days prior to the execution of the search warrant, next to a large bag of methamphetamine and a large scale.  The trial court ruled that because of the late disclosure, the State could not use the video data in its rebuttal, but that it could be used as impeachment evidence if Albert chose to testify.  Albert did not testify, and she rested her case.

The jury found Albert guilty on both counts.  During trial, Albert had not been detained. Following her conviction, the trial court remanded her into custody pending sentencing with bail set at $750,000.

D. POST-TRIAL MOTIONS

Post-trial, the State moved to hold Albert without bail based on information it had received from the Federal Bureau of Investigation (FBI). The FBI had informed the State that it had served a search warrant on Albert two days after her trial concluded. The State was concerned that because Albert was then facing a federal criminal charge, she may have more incentive to flee pending sentencing. Based on this concern, the State requested a no-bail hold. The court granted the State's request.

Albert then filed a motion for discovery regarding the state's evidence of the FBI's search warrant and a motion for discovery of the surveillance device. Albert argued that the FBI allegedly had information of where she had been living and for how long, which was relevant to her request for a *Franks* hearing.

Albert also filed a motion for a new trial, or in the alternative, a motion for arrest of the judgment, arguing that there was insufficient evidence and that the court erred by denying her motion to suppress evidence and her motion for an in-camera interview of the CRI. The court denied both motions.

That same day, the court sentenced Albert to 170 months of confinement and 12 months of community custody. It also heard Albert's motion for an appeal bond. The court set bail at four million dollars.

> As pointed out by counsel in his motion on the appeal bond, a no-bail hold is inappropriate unless I find one of four things that are laid out in a case of this type. I cannot find any of them, although I will find that I think [Albert] is likely to flee if she's not held on a substantial bond, but a stay doesn't regard unreasonable trauma to the victims, haven't dealt with legal financial obligations, and wouldn't unduly diminish a deterrent effect of punishment. So, based upon all that, I set bail at four million dollars.

No. 51930-5-II

VRP at 466.

Albert appeals.

ANALYSIS

Albert argues that the trial court erred by denying her request for a *Franks* hearing and her motion for a continuance, and also makes several other assignments of error. We hold that the trial court did not err by denying Albert's request for a *Franks* hearing or by denying Albert's motion for a continuance. However, we decline to decide Albert's other assignments of error because those issues were either not preserved at the trial court, or they were inadequately briefed and thus, we affirm the trial court's orders and Albert's convictions.

I. *FRANKS* HEARING

Albert argues that the trial court erred by denying her motion for a *Franks* hearing because she provided evidence to establish that she was not at the residence for a substantial period of time during the period of the controlled buy. We hold that the trial court did not err by denying Albert's motion for a *Franks* hearing.

In *Franks*, the United States Supreme Court held that the Fourth Amendment requires a trial court to conduct an evidentiary hearing upon the defendant's request if the defendant makes a substantial preliminary showing that an affiant deliberately or recklessly made material misstatements in a search warrant affidavit. 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). "Allegations of negligence or innocent mistakes are insufficient." *Franks*, 438 U.S. at 171. Rather, to be entitled to a *Franks* hearing, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171.

8

Albert's counsel informed the court that he used Albert's cell phone records to establish her whereabouts during the three-day period that the CRI purported to have bought methamphetamine from her. Her counsel prepared this information with assistance from a private investigator. Counsel argued that this information demonstrated that Albert was not at home for substantial periods of time during that three-day time period. When the court asked Albert's counsel whether he was arguing that Detective Nolan, the affiant, either lied or recklessly disregarded the truth, Albert's counsel stated, "Whether it's his reckless disregard of the truth or the informant's, I'm not sure that line is that bright." VRP at 33.

The court reviewed Detective Nolan's affidavit for the search warrant which detailed the CRI's allegations, knowledge of Albert, and the controlled buy that occurred between August 16 and August 18, 2017. Detective Nolan described how the CRI knew Albert and described the controlled buy in great detail. He admitted that the CRI is a known drug user and that the CRI "has provided this information . . . for favorable consideration on a criminal charge." CP at 101.

The trial court found that Albert did not meet her preliminary burden of proof for a *Franks* hearing. Albert did not present any evidence to show that Detective Nolan had information which indicated that the CRI was not telling the truth. Instead, Albert focused on whether the CRI lied, but she failed to make a substantial showing that Detective Nolan either lied or recklessly disregarded the truth in his affidavit, as required for a *Franks* hearing. *Franks*, 438 U.S. at 171.

Because Albert failed to meet her preliminary burden, we hold that the trial court did not err by denying her motion for a *Franks* hearing.

9

## II. MOTION FOR A CONTINUANCE

Albert argues that the trial court erred by denying her motion for a continuance. She argues that a continuance was necessary due to the prejudicial nature of the surveillance device; that the denial of a continuance forced a trial, terminating her ability to testify; and that the denial "created a structural inherent ineffective assistance of counsel in that [Albert]'s trial counsel was unaware of the video showing [Albert] sitting in the apartment next to an ounce of methamphetamine[.]" Br. of Appellant at 14. Albert also argues that a continuance was necessary because her trial counsel was unaware of the surveillance device video which showed her sitting next to a large brick of methamphetamine, and if he had known about it, he would have likely advised her to take the State's plea offer. We hold that the trial court did not err by denying Albert's motion for a continuance.

### A. PREJUDICE FROM DENIAL OF A CONTINUANCE

Under CrR 3.3(f)(2), the court may continue the trial "when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." We review a trial court's decision to deny a motion for a continuance for abuse of discretion. *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009). We will not disturb the trial court's decision "unless there is a clear showing it is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Kenyon*, 167 Wn.2d at 135 (internal quotation marks omitted) (quoting *State v. Flinn*, 154 Wn.2d 193, 199, 110 P.3d 748 (2005)).

Here, one week before trial, Albert requested a trial continuance to access the contents of the surveillance device, believing it may corroborate her argument that she was not home for substantial periods of time during the period of the controlled buy. At the time of her motion, she

had not yet seen the video data contained on the surveillance device. The trial court denied the motion, saying "I haven't heard that there is in fact any exculpatory evidence, just the possibility that there might be. There ha[s] been ample time to try to develop the things that are suggested." VRP at 44.

During trial, the officers still could not gain access to the data contained in the surveillance device until after the State rested its case. Once they did gain access by using special software, the surveillance device showed Albert sitting in her kitchen on August 22, 2017, three days prior to the execution of the search warrant, next to a large bag of methamphetamine and a large scale. The court ruled that the State could not use the device as rebuttal evidence, but that it could use it as impeachment evidence if Albert chose to testify, which she declined to do.

B. INEFFECTIVE ASSISTANCE OF COUNSEL

A claim that counsel was ineffective is a mixed question of law and fact that we review de novo. *State v. Jones*, 183 Wn.2d 327, 338, 352 P.3d 776 (2015). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In *Strickland*, the United States Supreme Court set forth a two-prong inquiry for reversal of a criminal conviction based on ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. Under the *Strickland* test, the defendant bears the burden to show (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Strickland*, 466 U.S. at 700.

We do not determine whether Albert's trial counsel's performance was deficient because she fails to make any argument explaining how her trial counsel's performance was deficient. RAP 10.3(a)(6). Because Albert fails to make any showing of deficient performance, we do not determine whether Albert was prejudiced. *Strickland*, 466 U.S. at 700.

C. CRR 4.7 VIOLATION

The State has the obligation to provide the defendant with certain material and information within the State's knowledge, possession, or control. CrR 4.7(a). CrR 4.7(h)(2) imposes on the State a continuing duty to disclose certain evidence to the defense, stating:

> Continuing Duty to Disclose. If, after compliance with these rules or orders pursuant thereto, a party discovers additional material or information which is subject to disclosure, the party shall promptly notify the other party or their counsel of the existence of such additional material, and if the additional material or information is discovered during trial, the court shall also be notified.

"Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). "Exclusion or suppression of evidence or dismissal for a discovery violation is an extraordinary remedy and should be applied narrowly." *State v. Vance*, 184 Wn. App. 902, 911, 339 P.3d 245 (2014).

Here, the State provided the defense with the surveillance device as soon as it was available, once the officers were able to gain access to it after the State rested its case. Once the device was provided, the trial court ruled that because of the late disclosure, the State could not use the device in its rebuttal, but that it could be used as impeachment evidence if Albert chose to testify, which she did not do. We hold that the court properly exercised its discretion to impose a

sanction against the State for its late disclosure, and did not abuse its discretion by denying Albert's request for a continuance.

### III. ADDITIONAL ASSIGNMENTS OF ERROR-NOT PRESERVED OR INADEQUATELY BRIEFED

Albert makes a number of other assignments of error. *See* assignments of error 1, 3, 5, 8, and 9. However, Albert makes no argument nor cites authority associated with these assignments of error. Therefore, we decline to decide these issues on the merits. RAP 10.3(a)(6) (a brief must contain "[t]he argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record"), 10.3(g); *see also State v. Harris*, 164 Wn. App. 377, 389 n. 7, 263 P.3d 1276 (2011) (assignment of error waived where appellant failed to present supporting argument and legal authority).

### CONCLUSION

We affirm the trial court's orders denying Albert's motions for a *Franks* hearing and for a continuance, and thus, we affirm the convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, A.C.J.

SUTTON, A.C.J.

We concur:

MAXA, .J.

GLASGOW, J.

13