

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE OCT 1 2 2017

Fairhurst, CJ

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Oct. 12, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Petitioner,

v.

ASCENCION SALGADO-MENDOZA,

Respondent.

NO. 93293-0

EN BANC

Filed        OCT 1 2 2017

STEPHENS, J.—We are asked to decide whether the district court in Ascencion Salgado-Mendoza's 2013 trial for driving under the influence abused its discretion by refusing to suppress the testimony of the State's toxicology witness. The State initially disclosed the names of nine toxicologists from the Washington State Patrol toxicology laboratory, indicating its intent to call "one of the following." Clerk's Papers (CP) at 6. It whittled the list to three names the day before trial, but did not specify which toxicologist it would call until the morning of trial, noting that it provided the witness's name "as soon as we had it and that's all that we can do in terms of disclosure." Verbatim Report of Proceedings (VRP) (May 9, 2013) at 31. Salgado-

Mendoza moved to suppress the toxicologist's testimony under CrRLJ 8.3(b) based on late disclosure, asking the court to "send a message to the state patrol crime lab and say this isn't okay anymore." *Id.* at 27. The court refused, finding no actual prejudice to the defense and observing that the practice of disclosing a list of available toxicologists rather than a specific witness was driven more by underfunding of the crime labs than by mismanagement.

Salgado-Mendoza appealed to the superior court, which found the district court had abused its discretion. The Court of Appeals affirmed, reasoning that the delayed disclosure violated the discovery rules and caused prejudice. We disagree. While the State's disclosure practice amounted to mismanagement within the meaning of CrRLJ 8.3(b), Salgado-Mendoza has not demonstrated actual prejudice to justify suppression. The trial court considered all the circumstances, including the nature of the witness's testimony and the five months that counsel had to prepare following the State's initial disclosure. On this record, we cannot say the district court's ruling was "manifestly unreasonable" and thus an abuse of discretion. We reverse the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

In August 2012, Salgado-Mendoza was arrested on suspicion of driving under the influence (DUI). Salgado-Mendoza consented to a breath test, which revealed his

blood alcohol concentration to be above the legal limit. The State charged Salgado-Mendoza with DUI, and trial was set in the district court of Jefferson County for May 9, 2013.

At trial, the State planned to call a toxicologist as an expert witness to testify regarding DUI testing procedures in Washington. Five months before trial, the State disclosed a list of nine potential toxicologist witnesses, only one of whom would testify. Two weeks before trial, Salgado-Mendoza filed a supplemental discovery request demanding, in part, that the State identify which toxicologist it actually intended to call. The State asserts that it attempted to comply. Salgado-Mendoza still had not received this information by May 6, 2013, three days before trial. Alleging governmental misconduct, he filed a CrRLJ 8.3(b) motion to dismiss the case or suppress the toxicologist's testimony. The day before trial, the State narrowed the list to three names. At 9:00 a.m. on the morning of trial, the State identified the toxicologist who would testify, indicating it had just received the name that morning.

Salgado-Mendoza asserted that the State's delayed disclosure was "a classic form of governmental misconduct." VRP at 25. Arguing that the need to interview and prepare for cross-examination of nine witnesses when only one will testify placed an undue burden on the defense, Salgado-Mendoza urged the court to dismiss—or at least

to preclude the toxicologist's testimony.[1] In opposition, the State argued that five months was adequate time to prepare for each possible witness, the late disclosure was a result of the toxicology lab being "overworked and understaffed,"[2] and the prosecution had repeatedly contacted the toxicology lab to request that a specific toxicologist witness be identified. VRP at 30. The trial judge denied the motion and allowed the toxicologist's testimony. *Id.* at 35-36 (citing the toxicology lab's perennial staffing shortages and the five months Salgado-Mendoza had to prepare). The case proceeded to trial, where a jury found Salgado-Mendoza guilty.

Salgado-Mendoza appealed his DUI conviction to the superior court for Jefferson County. Finding that the State's late disclosure constituted governmental mismanagement and a violation of discovery rules, that court held that the district court abused its discretion by failing to suppress the toxicologist's testimony. The superior court additionally held the trial court abused its discretion by suppressing a portion of

---

[1] Salgado-Mendoza further argued that the need to review nearly 200 pages of available background materials (roughly 20 pages per toxicologist) represented a "tremendous and needless waste of [counsel's] time." CP at 40. He conceded that the 60 pages associated with the three short-list names would have been reasonable had he been given more than one day's notice. *See* VRP at 28.

[2] Because the lab serves the entire state, its toxicologists are sometimes asked to testify at multiple trials at the same time. The toxicology lab's staff shortage was particularly acute here because at the time of trial, three of the nine disclosed toxicologists were on maternity leave. Although this suggests that there were actually only six toxicologists who might testify, the State apparently did not remove the unavailable toxicologists from the list until May 8, 2017.

the defense expert's testimony regarding the breath alcohol testing machine used in testing Salgado-Mendoza. The superior court reversed the conviction and remanded the matter for a new trial.

The State moved for discretionary review. The Court of Appeals, accepting review only with respect to the trial court's decision not to suppress the toxicologist's testimony, affirmed the superior court. *See State v. Salgado-Mendoza*, 194 Wn. App. 234, 238, 373 P.3d 357, *review granted*, 186 Wn.2d 1017, 383 P.3d 1028 (2016). The Court of Appeals held that (1) the prosecutor's failure to "obtain the name of its witness in a timely manner" violated discovery rules and constituted governmental mismanagement, (2) this misconduct prejudiced Salgado-Mendoza, and (3) suppression of the toxicologist's testimony was the proper remedy. *Id.* at 243. Writing in dissent, Judge Worswick argued that the trial court's denial of Salgado-Mendoza's CrRLJ 8.3(b) motion did not constitute an abuse of discretion. Because Salgado-Mendoza's "bald assertion that he would have preferred to request a continuance" rather than proceed to trial unprepared was insufficient to meet the evidentiary burden of actual prejudice required for relief under CrRLJ 8.3(b), *id.* at 260 (Worswick, J. dissenting), it was not "manifestly unreasonable" for the district court to deny Salgado-

Mendoza's motion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993). We granted review.[3]

## STANDARD OF REVIEW

We review a trial court's ruling on a CrRLJ 8.3(b) motion under the deferential abuse of discretion standard. *See, e.g., State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). A court abuses its discretion when an "'order is manifestly unreasonable or based on untenable grounds.'" *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 668, 260 P.3d 874 (2011) (internal quotation marks omitted) (quoting *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009)). A discretionary decision is "'manifestly unreasonable'" or "'based on untenable grounds'" if it results from applying the wrong legal standard or is unsupported by the record. *Id.* (internal quotation marks omitted) (quoting *Rafay*, 167 Wn.2d at 655). A reviewing court may not find abuse of discretion simply because it would have decided the case differently—it must be convinced that "'*no reasonable person would take the view adopted by the trial court.*'" *State v. Perez-Cervantes*, 141 Wn.2d 468, 475, 6 P.3d 1160 (2000) (quoting *State v. Huelett*, 92 Wn.2d 967, 969, 603 P.2d 1258 (1979)).

---

[3] Because the question on appeal is limited to relief under CrRLJ 8.3(b), this case will be remanded for a new trial regardless of our holding.

ANALYSIS

Under CrRLJ 8.3(b), the party seeking relief bears the burden of showing both misconduct and actual prejudice. In this case, Salgado-Mendoza can demonstrate misconduct within the meaning of the rule, but not actual prejudice. He can prove misconduct because a discovery violation need not be willful—simple mismanagement will suffice. Here, the State's failure to at least narrow the list of possible toxicology witnesses pretrial reflects mismanagement. However, Salgado-Mendoza cannot show prejudice that warrants complete suppression of the toxicologist's testimony. As the trial court recognized, Salgado-Mendoza's counsel had ample time to prepare to examine each potential witness, given that discovery about their anticipated testimony and their professional backgrounds was timely provided.[4] Furthermore, while State toxicologists are not exactly fungible witnesses, their substantive testimonies would likely be similar. Under these circumstances, it was not manifestly unreasonable for the trial court to deny Salgado-Mendoza's CrRLJ 8.3(b) motion.

---

[4] The front page of the toxicology lab's website contains links to curriculum vitae of each state toxicologist, detailing the specialties and education of each potential witness. *See* WASH. STATE PATROL FORENSIC LAB. SERVS., Toxicology Laboratory Division: Public Records Index (last visited June 23, 2017), http://www.wsp.wa.gov/forensics/toxlabindex.php [https://perma.cc/NCM3-YFQT] (see entries under "Curriculum Vitae").

A.     Discovery Sanctions and Obligations in Washington

If a party fails to comply with the rules of discovery, trial courts have broad authority to compel disclosure, impose sanctions, or both. *See, e.g., State v. Hutchinson*, 135 Wn.2d 863, 882-83, 959 P.2d 1061 (1998) (regulation of discovery is left to the "sound discretion" of trial courts). The rule at issue in this case, CrRLJ 8.3(b), authorizes the court to dismiss a criminal action if the State violates its discovery obligations. These obligations are found in CrRLJ 4.7(a), which governs discovery in criminal cases in courts of limited jurisdiction. The rule sets out, in relevant part, the prosecutor's obligation to disclose the identities of witnesses. *See* CrRLJ 4.7(a)(1). This rule is complemented by the prosecutor's continuing obligations under CrRLJ 4.7(d). Even if the State fails to live up to its discovery obligations, however, relief under CrRLJ 8.3(b) is available only if the trial court finds prejudicial governmental misconduct or arbitrary action.

The use of CrRLJ 8.3(b) to punish a discovery violation is limited because the rule expressly contemplates dismissal, the most severe sanction available to trial courts. CrRLJ 8.3(b) states:

> The court, in the furtherance of justice after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

As relevant to this case, a trial court may grant a motion for relief under CrRLJ 8.3(b) only in the event of (1) governmental misconduct that (2) "materially affect[s] the accused's right to a fair trial."[5] *Id.* Violation of the State's discovery obligations can support a finding of governmental misconduct. *See State v. Brooks*, 149 Wn. App 373, 375, 203 P.3d 397 (2009).

CrRLJ 4.7(a)(1) sets out the State's obligations under the rules of discovery for courts of limited jurisdiction. In relevant part, CrRLJ 4.7(a)(1) states that the "prosecuting authority shall, upon written demand, disclose"

> (i) the names and addresses of persons whom the prosecuting authority intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witnesses;
> . . . .
> (vii) any expert witnesses whom the prosecuting authority will call at the hearing or trial, the subject of their testimony, and any reports relating to the subject of their testimony that they have submitted to the prosecuting authority;

This disclosure obligation is limited to information within the "possession [and] control" of the prosecutor. CrRLJ 4.7(a)(1), (4). As the Court of Appeals recognized, there is some question as to whether the prosecutor "controls" the toxicology lab even

---

[5] These requirements limit judicial discretion in the CrRLJ 8.3(b) context, consistent with CrRLJ 4.7(g)(7)(ii) (authorizing dismissal for prosecutorial discovery violations only if willful or grossly negligent).

though both are state entities. *See Salgado-Mendoza*, 194 Wn. App. at 245 & n.7 (discussing alternate views).

Regardless of whether the state prosecutor "controls" the state toxicology lab, discovery rules require the prosecutor to obtain disclosure of discoverable information in the possession of others. CrRLJ 4.7(d) states:

> Upon defendant's request and designation of material or information in the knowledge, possession or control of other persons which would be discoverable if in the knowledge, possession or control of the prosecuting authority, the prosecuting authority shall attempt to cause such material or information to be made available to the defendant. If the prosecuting authority's efforts are unsuccessful and if such material or persons are subject to the jurisdiction of the court, the court shall issue suitable subpoenas or orders to cause such material to be made available to the defendant.

CrRLJ 4.7(d) imposes a continuing obligation on the prosecutor to seek the disclosure of discoverable information not in his or her control, including the identity of witnesses. If the State, despite its best efforts, is unable to obtain the information, it should so notify the court. *See, e.g.*, *State v. Blackwell*, 120 Wn.2d 822, 832, 845 P.2d 1017 (1993) (prosecutor's unsuccessful efforts to obtain police personnel files, and subsequent communication to inform the trial court, were reasonable).

In this case, the Court of Appeals majority found that the prosecutor's late disclosure "would not likely have justified dismissal of the case, but suppression was a reasonable alternative to dismissal." *Salgado-Mendoza*, 194 Wn. App. at 251. Indeed, the primary remedy sought by Salgado-Mendoza's motion was suppression, not

dismissal. *See* VRP at 27 (arguing for CrRLJ 8.3(b) suppression).[6] This is consistent with the general approach to discovery violations, encouraging courts to impose the least severe sanction that adequately addresses the prejudice. *See, e.g., State v. Wilson*, 149 Wn.2d 1, 12, 65 P.3d 657 (2003) (suppression represents an "intermediate step," avoiding the "extraordinary remedy of dismissal"); *see also State v. McReynolds*, 104 Wn. App. 560, 579, 17 P.3d 608 (2000) ("Dismissal is not justified when suppression of evidence will eliminate whatever prejudice is caused by the action or misconduct.").[7] This court has previously interpreted CrRLJ 8.3(b) as authorizing suppression (as well as lesser sanctions) at the discretion of the trial court. *See City of Seattle v. Holifield*, 170 Wn.2d 230, 239, 240 P.3d 1162 (2010) (noting that because dismissal under CrRLJ 8.3(b) is discretionary, "suppression presents an appropriate, less severe remedy than dismissal under CrRLJ 8.3(b)"). Before the court may grant relief under CrRLJ 8.3(b), however, it must find misconduct and actual prejudice.

---

[6] Salgado-Mendoza's counsel explained his support for suppression over outright dismissal: "Yes, I would love for you [the court] to dismiss it. I know you're not going to do that. But I would like you to send a message to the state patrol crime lab and say this isn't okay anymore." VRP at 27.

[7] Legal scholarship analyzing federal case law highlights similar themes of judicial discretion and preference for the least severe sanction. *See, e.g., Discovery and Access to Evidence*, 44 GEO. L.J. ANN. REV. CRIM. PROC. 405, 429-30 (2015) ("The district court has broad discretion to sanction the government for failure to comply with discovery requests, but the court should impose the least severe sanction that will accomplish prompt and full compliance with its discovery order.").

The party seeking relief bears the burden to show misconduct by a preponderance of the evidence. *See, e.g., State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). However, the party does not need to prove bad faith on the part of the prosecutor. *See State v. Dailey*, 93 Wn.2d 454, 457, 610 P.2d 357 (1980). As this court noted in *Dailey*, the "'governmental misconduct' need not be of an evil or dishonest nature; simple mismanagement is sufficient." *Id.*

The movant also bears the burden of demonstrating prejudice. *See, e.g., Michielli*, 132 Wn.2d at 240. Our case law makes clear that a party cannot meet this burden by generally alleging prejudice to his fair trial rights—a showing of actual prejudice is required. *See Rohrich*, 149 Wn.2d at 649 (noting "dismissal under CrR 8.3(b) . . . *requires a showing of not merely speculative prejudice but actual prejudice to the defendant's right to a fair trial*" (emphasis added)); *see also City of Seattle v. Orwick*, 113 Wn.2d 823, 829, 784 P.2d 161 (1989) ("'[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate.'" (quoting *United States v. Morrison*, 449 U.S. 361, 365, 101 S. Ct. 665, 66 L. Ed. 2d 564 (1981))). Importantly, late disclosure of material facts can support a finding of actual prejudice. *See State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980). In the dismissal context, a defendant is prejudiced when delayed disclosure interjects "new facts"

shortly before litigation, forcing him to choose between his right to a speedy trial and to be represented by an adequately prepared attorney. *Id.*

> B. The Trial Court Did Not Abuse Its Discretion by Refusing To Suppress the Toxicologist's Testimony

On appeal, the superior court held that the trial court abused its discretion by denying Salgado-Mendoza's CrRLJ 8.3(b) motion. The Court of Appeals affirmed based on two findings: first, that late disclosure of a witness's identity constitutes governmental misconduct, and second, that the late disclosure prejudiced Salgado-Mendoza's defense. *See Salgado-Mendoza,* 194 Wn. App. at 243. We agree that the State's delayed disclosure likely constitutes misconduct under the rule. However, Salgado-Mendoza's allegation of prejudice due to the mere fact of late disclosure, without more, is inadequate to establish prejudice under CrRLJ 8.3(b). Because Salgado-Mendoza has not demonstrated by a preponderance of the evidence how the State's misconduct "materially" prejudiced his defense, we cannot conclude it was "manifestly unreasonable" for the trial court to allow the toxicologist's testimony. CrRLJ 8.3(b); *Rhome,* 172 Wn.2d at 668. Given the deference due to trial courts under the abuse of discretion standard, we reverse the Court of Appeals.

*(1) The State's Disclosure Likely Constituted Governmental Misconduct*

On this record, Salgado-Mendoza likely meets his burden to show "governmental misconduct." CrRLJ 8.3(b). The State did not disclose which

toxicologist it intended to call until 9:00 a.m. on the day of trial. *See* VRP at 25; CrRLJ 4.7(a)(1)(i) (requiring timely disclosure of "the names and addresses of persons whom the prosecuting authority intends to call as witnesses"). Delayed disclosure may support a finding of governmental misconduct. *See Price*, 94 Wn.2d at 814. Misconduct occurs when the prosecutor "inexcusably fails to act with due diligence," resulting in material facts not being disclosed "until shortly before a crucial stage in the litigation process." *Id.* As the State acknowledges, it did not "intend[]" to call nine toxicologists as witnesses—it intended to call one. CrRLJ 4.7(a)(1)(i). By not disclosing the name of the witness it intended to call until the day of trial, the State did not live up to its discovery obligations under CrRLJ 4.7.

In opposition to Salgado-Mendoza's motion, the State argued its late disclosure was not the product of misconduct. *See* VRP at 30. Rather, the delay resulted from perennial staffing and resource shortages at the toxicology lab—not from any failure of due diligence on the part of the prosecutor. *Id.* The prosecutor essentially argued that she could not disclose what she did not know, and had made a sincere effort to obtain the requested information. *Id.* (noting multiple phone calls to the toxicology lab). While we might be sympathetic to the prosecutor's situation, these arguments seem to confuse the *Price* "due diligence" standard with the concept of bad faith, which is not alleged here. *See* VRP at 25; *Price*, 94 Wn.2d at 814;

*Blackwell,* 120 Wn.2d at 832 (dismissal appropriate based on bad faith violations of discovery rules, i.e., prosecutorial "'game playing'"). Compliance with discovery obligations—"due diligence" under *Price*—requires more than the *absence* of bad faith. *See* 94 Wn.2d at 814; CrRLJ 4.7(d) (imposing ongoing disclosure obligations).

The prosecutor has the continuing obligation to pursue the disclosure of discoverable information. *See* CrRLJ 4.7(d). If these efforts prove unsuccessful, discovery rules instruct her to so inform the court.[8] *Id.* In this case, it is unclear from the record whether the prosecutor communicated adequately with the court; it was Salgado-Mendoza, not the prosecutor, who repeatedly brought the matter to the court's attention. *See* CP at 12, 40. The prosecutor seemed to minimize the State's obligations under CrRLJ 4.7(d), stating that "[t]he defendant was given the name as soon as we had it and that's all we can do in terms of disclosure." VRP at 31. This statement is incorrect—pursuing disclosure of information the prosecutor does not have is literally the purpose of CrRLJ 4.7(d).

---

[8] *Blackwell* is instructive. 120 Wn.2d 822. In that case, the State communicated to the trial court that it had failed to obtain police records, and suggested the judge subpoena the information. *Id.* at 827. On appeal, we found no mismanagement. *Id.* at 832. The Court of Appeals majority's reading of *Blackwell,* suggesting that a prosecutor's failure to take these steps is mismanagement, appears overbroad. *See Salgado-Mendoza,* 194 Wn. App. at 246-47. Nevertheless, on this record, we agree that *Blackwell* supports finding mismanagement.

Ultimately, Salgado-Mendoza must prove neither bad faith nor a CrRLJ 4.7(d) violation to demonstrate governmental misconduct. The standard, at least at this stage of the CrRLJ 8.3(b) analysis, is considerably more lenient. Salgado-Mendoza needs to show only "mismanagement"—that the State, with no presumption of ill will, belatedly disclosed material information. *See, e.g., Dailey*, 93 Wn.2d at 457 ("'[G]overnmental misconduct' need not be of an evil or dishonest nature; simple mismanagement is sufficient."). Salgado-Mendoza has met that burden here. CrRLJ 4.7(a)(1)(i) obligated the State to disclose the name of the toxicologist it intended to call; the State instead disclosed the names of nine potential witnesses. CP at 6. For a full five months, the State made no attempt to narrow the list—despite the fact that at least three potential witnesses were on maternity leave and would clearly be unavailable at trial. *See* VRP at 30. Instead, no additional relevant disclosures were made until, the afternoon before trial, the State narrowed the list to three names. *Id.* at 21. The toxicology lab did not reveal the individual witness's name until the morning of trial, the day he was to testify.[9] *Id.* at 25. This constitutes mismanagement by the State, and the fact that the information was as much a

---

[9] We note with concern that the delayed disclosure in this case does not appear to be an isolated incident. The record indicates that failing to identify a witness until just before trial is standard operating procedure for the State toxicology lab. *See, e.g.*, VRP at 30. With respect to initial disclosures, it appears the lab's policy has been to disclose the names of all toxicologists on staff. *See, e.g.*, Suppl. Br. of Resp't at 1.

surprise to the prosecutor as it was to Salgado-Mendoza is hardly evidence to the contrary.

*(2)Although Salgado-Mendoza Demonstrates Misconduct, There Was Insufficient Evidence of Prejudice To Justify Suppression*

Relief under CrRLJ 8.3(b) requires the moving party to show both mismanagement and prejudice. Salgado-Mendoza, despite demonstrating misconduct, does not show that the State's action sufficiently prejudiced his defense to justify suppression of the toxicologist's testimony. At trial, Salgado-Mendoza argued that reviewing material for each potential witness would obligate counsel to "spend needless hours wasted," thus burdening the defense. VRP at 25. The trial judge denied the motion, reasoning that the five months defense counsel had to review each potential witness's materials mitigated the prejudice. The Court of Appeals disagreed, finding that the "unfair burden" of investigating nine potential witnesses is sufficient, without more, to establish prejudice. *See Salgado-Mendoza*, 194 Wn. App. at 249. Because this is not what CrRLJ 8.3(b) requires, we reverse.

CrRLJ 8.3(b) requires that governmental misconduct "materially affect[ed]" the defendant's right to a fair trial. Our case law typically refers to this as "actual prejudice." *See, e.g., Rohrich*, 149 Wn.2d at 649. A defendant may be impermissibly prejudiced if a late disclosure compels him to choose between his right to a speedy trial and his right to be represented by adequately prepared

counsel.[10] *See, e.g., Price*, 94 Wn.2d at 814. However, because the party seeking relief carries the burden of proof, Salgado-Mendoza must articulate how the late disclosure materially prejudiced his defense. *See, e.g., Rohrich*, 149 Wn.2d at 649 (party must show "not merely speculative prejudice but actual prejudice"). He has not done so here.

At trial, Salgado-Mendoza's counsel argued that the prosecutor's disclosure of nine names instead of one prejudiced the defense because preparing to cross-examine multiple witnesses *would have resulted* in "needless hours wasted." VRP at 25. Notably, counsel did not argue that he actually wasted them.[11] *Id.* This argument seems to falsely equate the *risk* of prejudice with "actual prejudice" in the CrRLJ 8.3(b) context. *See, e.g., Rohrich*, 149 Wn.2d at 649 (party must show "not merely speculative prejudice but actual prejudice").

---

[10] The Court of Appeals majority and dissent disagree as to whether the "new facts" test applies in this case. *See Salgado-Mendoza*, 194 Wn. App. at 249 n.14. If so, Salgado-Mendoza would have to establish actual prejudice by specifically showing that the "interjection of 'new facts'" due to the late disclosure compelled him to choose between two constitutional rights. *State v. Woods*, 143 Wn.2d 561, 584, 23 P.3d 1046 (2001). However, as the Court of Appeals majority points out, our case law developing the heightened "new facts" standard deals with the extreme remedy of dismissal—not suppression. *See Salgado-Mendoza*, 194 Wn. App. at 249 n.14. We are not compelled to resolve the question here because Salgado-Mendoza fails to demonstrate actual prejudice regardless of whether the "new facts" test applies. *See supra* Section B.2.

[11] As the Court of Appeals dissent puts it, "[C]ounsel was not *unable* to prepare— he was just *unwilling* to prepare for cross-examination." *Salgado-Mendoza*, 194 Wn. App. at 262. Relatedly, counsel did not claim that the State's mismanagement had unreasonably increased the time or money spent on Salgado-Mendoza's defense. *See, e.g.*, VRP at 25.

-18-

Before this court, Salgado-Mendoza argues more convincingly that the late disclosure resulted in a less effective cross-examination of the State's toxicologist witness. *See* Supp. Br. of Resp't at 15-16. The district court judge addressed this concern directly, asking counsel whether there was "anything specifically [he] need[ed] to research" further before the toxicologist testified. VRP at 37. Counsel reasonably pointed out the difficulty of predicting the impact of the disclosure delay on a cross-examination that had not yet occurred. *Id.* ("I will do the best I can with what I have. . . . [I]t really is going to depend . . . on how far [the toxicologist's testimony] goes."). Nevertheless, counsel never asserted he was unprepared for cross-examination, nor did Salgado-Mendoza request a continuance. *Id.* On these facts, the State's misconduct did not give rise to "actual prejudice" under CrRLJ 8.3(b).

To be clear, there are circumstances in which it would be appropriate to infer actual prejudice from delayed disclosures. For example, late disclosure of a key witness presenting unique testimony—such as an investigating officer—is likely to prejudice the defense. A state toxicologist presents a closer question. We acknowledge that toxicologists are not "'fungible'" witnesses as the district court suggested—they have individual professional and educational backgrounds, making them unique for purposes of impeachment and influencing the likely scope of their

testimony.[12] CP at 69; Suppl. Br. of Resp't at 13. Yet the fact remains that any state toxicologist called to testify in Salgado-Mendoza's case would give similar substantive testimony: a description of the effects of alcohol on the body, how blood-alcohol is measured, and procedures for roadside sobriety testing, etc. Salgado-Mendoza implicitly concedes this point, primarily arguing that toxicologists are unique for purposes of impeachment. *See* CP at 41 (noting that each witness "has his or her own background and story that might well provide fodder for cross-examination"). The district court addressed this point explicitly, observing that on topics such as lab procedures Salgado-Mendoza could ask any of the toxicologists the same set of cross-examination questions. *See* VRP at 22 (noting each toxicologist would testify similarly because each would speak to the same "standard operating procedure[s] for a toxicology lab").

It is also important to recognize that prejudice can arise from actions other than withholding discoverable information. Although the State did delay disclosure in this case, its initial error was actually one of overdisclosure—listing nine potential witnesses rather than the single toxicologist it intended to call. *See* CP at 6; CrRLJ 4.7(a)(1)(i). As anyone who has used an Internet search engine knows, receiving

---

[12] Presumably, many of these differences were known to Salgado-Mendoza's attorney during the months leading up to trial—the toxicology lab's website lists each toxicologist's curriculum vitae. *See* WASH. STATE PATROL FORENSIC LAB. SERVS., *supra*.

too much information can be just as unenlightening as receiving nothing at all. The district court, in denying Salgado-Mendoza's CrRLJ 8.3(b) motion, acknowledged that the State's actions could give rise to prejudice—but found that any such prejudice was mitigated by the circumstance of the case.

The district court's finding turned on its evaluation of the practical consequences of the State's disclosure. The court found that the extra work required was not "extraordinary" given the amount of time counsel had to prepare and the fact that he was an experienced attorney, having litigated roughly 1,000 DUI trials. VRP (5/9/13) at 35. Again, this conclusion is reasonable and supported by the record. Researching the backgrounds of nine potential witnesses rather than one is not trivial and, on a sufficiently tight timeline, could be burdensome. On the other hand, in this case counsel had a full five months to prepare following the State's initial disclosure. *Id.* During that time, counsel had access to publicly available information detailing the toxicologists' different educational and professional histories. Furthermore, any of the witnesses would likely testify to a common core of topics—blood alcohol content testing procedures, DUI field tests, etc.—allowing counsel to prepare a common set of cross-examination questions. In this context, the trial court reasonably determined that having to review additional materials

relating to toxicologists who did not ultimately testify would not substantially prejudice the defense.

The trial court was in the best position to make a fair call. The trial court, after considering mitigating factors such as counsel's expertise and extensive preparation time, and the substantive similarity of toxicologist testimony across DUI trials, found that the burden caused by the State's delayed disclosure did not justify suppression of the toxicologist's testimony.[13] Although another court might have held differently, perhaps viewing the State's apparent disinterest in even narrowing the list of toxicologists as a sufficiently egregious violation to support relief under CrRLJ 8.3(b), disagreement in result is an insufficient basis on which to find an abuse of discretion. *See, e.g., Perez-Cervantes*, 141 Wn.2d at 475 (reviewing courts must be convinced that "*no reasonable person* would take the view adopted by the trial court'" (quoting *Huelett*, 92 Wn.2d at 969). Because the trial court's action was not "manifestly unreasonable" under the circumstances of this case, we find no abuse of discretion. *See Wash. State Physicians*, 122 Wn.2d at 339.

---

[13] Note that the district court's rejection of Salgado-Mendoza's motion to suppress does not eliminate the possibility of lesser sanctions. For example, the court could reasonably have ordered the State to pay a portion of Salgado-Mendoza's legal fees had his counsel "wasted" time in preparing for multiple cross-examinations. *See* CrRLJ 4.7(g)(7)(i).

## CONCLUSION

While we acknowledge the State's mismanagement in failing to timely disclose its testifying toxicologist, we agree with the district court that Salgado-Mendoza has not demonstrated actual prejudice to justify suppression of the toxicologist's testimony. Because there was no abuse of discretion, we reverse the Court of Appeals.

Stephens, J.

WE CONCUR:

Fairhurst, C.J.

Wiggins, J.

González, J.

Owens, J.

No. 93293-0

MADSEN, J. (dissenting)—I agree with the majority that the State's failure to disclose the name of the toxicologist who would testify at Ascencion Salgado-Mendoza's trial until the morning of trial was mismanagement sufficient to show governmental misconduct under CrRLJ 8.3(b). By failing to disclose the name of this key witness until the day he was set to testify, the State did not live up to its discovery obligations under CrRLJ 4.7. I depart from the majority, however, because I would also find that Salgado-Mendoza was prejudiced by this delayed disclosure. Forcing a defendant to bear the burden of preparing to cross-examine a long list of witnesses when the State only intends to call one is not how our system of justice operates. The State cannot cite funding deficiencies and simply shift its burden of prosecution onto defense counsel. If the State wishes to pursue prosecution, it must allocate sufficient resources to its departments so that they may operate in a way that is consistent with a defendant's right to a fair trial. By understaffing the State's toxicology laboratory so that they cannot confirm who will testify until the day of trial, the State is not meeting this burden and defendants are being forced to compensate for the deficiency. Therefore, I would find that the trial court abused its discretion by denying Salgado-Mendoza's motion to suppress the

toxicologist's testimony. Because the majority instead affirms the trial court's finding that there was no prejudice, I respectfully dissent.

As the majority aptly explains, the discovery rules require a prosecutor to obtain and disclose discoverable information in the possession of others. CrRLJ 4.7(d). If the prosecutor is unable to obtain the information, he or she should notify the court, and the court shall then issue subpoenas or orders to cause the information to be made available to the defendant. *Id.* The names of persons the State intends to call as witnesses are explicitly included in the discovery rules as information the prosecuting authority must disclose. CrRLJ 4.7(a)(1). If the State fails to comply with the rules of discovery, the defendant may seek relief under CrRLJ 8.3(b), which states:

> The court, in furtherance of justice after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

To obtain dismissal under CrRLJ 8.3(b), a defendant must show arbitrary action or governmental misconduct, but the governmental misconduct need not be of an evil or dishonest nature; simple mismanagement is enough. *State v. Dailey*, 93 Wn.2d 454, 457, 610 P.2d 357 (1980). Dismissal also requires a defendant show that the misconduct prejudiced his or her right to a fair trial. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). "Such prejudice includes the right to a speedy trial and the 'right to be represented by counsel who has had sufficient opportunity to adequately prepare a

2

material part of his defense.'" *Id.* (quoting *State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980)).

In this case, Salgado-Mendoza has shown actual prejudice because the State's late disclosure forced him to choose between his speedy trial right and proceeding to trial with adequately prepared counsel. *See* U.S. CONST. amend. VI. Defense counsel made clear in the trial court that he would have preferred to request a continuance after learning the identity of the testifying toxicologist in order to be fully prepared for cross-examination. But Salgado-Mendoza did not wish to waive his right to a speedy trial. Verbatim Report of Proceedings (May 9, 2013) (VRP) at 36. Instead, Salgado-Mendoza was forced to proceed with an attorney who was not prepared to effectively cross-examine the State's toxicologist.

One of the purposes of discovery rules is to afford an opportunity to prepare for effective cross-examination. CrR 1.2 (Superior Court Criminal Rules are intended to provide for the *just* determination in every criminal proceedings, which includes simplicity, fairness, *effective justice*, and elimination of unjustifiable expense and delay); *State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015) (for defense counsel to be *effective*, counsel must investigate the case, which includes interviewing witnesses); *State v. Yates*, 111 Wn.2d 793, 797-98, 765 P.2d 291 (1988) (one goal of discovery is to prevent surprises during testimony). Importantly, *effective* cross-examination is the goal. As the majority suggests, Salgado-Mendoza's attorney could have prepared for a cross-examination that probed into the general areas of testimony common to most

3

toxicologists. But what makes a cross-examination truly effective is the ability to inquire into the differences in education, experience, and knowledge that lay the foundation for each toxicologist's unique understanding of those general areas.

A prime example of defense counsel's lack of preparedness was his attempt to question the testifying toxicologist about a 2009 study that allegedly criticized certain tests regularly used by the State toxicology laboratory. VRP at 243. When questioned about the study, the toxicologist informed counsel that he was not aware of the specific study. The trial court then sustained the State's objection to the line of questioning because the toxicologist's lack of familiarity with the study would prevent him from providing "an intelligent educated answer." *Id.* at 243-44. Had the State provided Salgado-Mendoza with the name of the testifying toxicologist prior to the morning of trial, defense counsel could have interviewed the toxicologist, learned what studies he was familiar with, and provided him a copy of the unfamiliar study so that they could have a productive dialogue about it during cross-examination. Without that time for preparation, defense counsel's attempt at using the study to defend his client simply fell flat. Despite counsel's apparent experience representing people in driving under the influence (DUI) trials generally, he was unable to prepare for this particular toxicologist's testimony in the context of Salgado-Mendoza's specific case. Without waiving his speedy trial right, Salgado-Mendoza was left with no choice but to proceed with unprepared counsel because of the State's delayed disclosure.

4

We have found prejudice in similar circumstances. In *Michielli*, we found that the defendant had shown prejudice because the State had brought additional charges against him three business days before trial. 132 Wn.2d at 244. In that situation, the defendant was prejudiced because he was forced to waive his speedy trial right and ask for a continuance to prepare for the surprise charges. *Id.* In this case, Salgado-Mendoza was faced with similar circumstances. He too was faced with the difficult decision of whether to waive his speedy trial right or proceed with unprepared counsel. While the defendant in *Michielli* chose to waive speedy trial, Salgado-Mendoza chose to proceed with unprepared counsel. That Salgado-Mendoza chose one of his rights to a fair trial rather than the other does not distinguish this case from *Michielli*. The fact that he was faced with the choice at all is enough to find prejudice. *See, e.g., State v. Brooks*, 149 Wn. App. 373, 387, 203 P.3d 397 (2009) ("The State cannot by its own unexcused conduct force a defendant to choose between his speedy trial rights and his right to effective counsel who has had the opportunity to adequately prepare a material part of his defense." (citing *Price*, 94 Wn.2d at 814)).

Further, there is no question that even if Salgado-Mendoza had requested a continuance, the State would not have disclosed the name of the particular toxicologist who would be testifying until the day of trial. This situation was not a one-time occurrence unique to Salgado-Mendoza's trial. *See* VRP at 25-27, 30. There is a pattern and practice of last minute disclosures as to which toxicologist will testify. If Salgado-Mendoza had requested a continuance, he would have been forced to waive his speedy

5

trial right and later forced to yet again proceed with unprepared counsel because of the State's persistent failure to meet its discovery obligations. Given the unenviable choice between his rights to a fair trial that the State forced on Salgado-Mendoza by its delayed disclosure, I would hold that the trial court abused its discretion by denying suppression.

I also stress that the trial court erred in describing the toxicologist witnesses as fungible. Although the majority states that the toxicologists are not fungible, its ruling nonetheless minimizes the importance of their differences. There are 20 experts currently listed on the toxicology lab's website. *See* WASH. STATE PATROL FORENSIC LAB. SERVS., Toxicology Laboratory Division: Public Records Index (last visited Aug. 3, 2017), http://www.wsp.wa.gov/forensics/toxlabindex.php#vitae [https://perma.cc/NCM3-YFQT]. The toxicologists vary greatly in education and expertise. This variation in experience is critical because it provides the foundation for the unique understanding of each toxicologist about the core topics relevant to DUI trials. This varied experience determines which topics a toxicologist witness is comfortable exploring in depth and which they lack an understanding of. The trial court minimized this varied experience by narrowing in on the fact that each toxicologist would testify similarly because each would testify to the same "standard operating procedure for a toxicology lab." VRP at 22. But in a typical DUI trial, the toxicologist may testify about many things beyond just the standard operating procedure for the simulator solution that is used as the reference check during the breath test. Toxicologists may testify about alcohol pharmacokinetics, the effects of alcohol, field sobriety tests, retrograde extrapolation, Widmark's formula

(calculating blood alcohol content), and other biological factors that impact breath test results. The toxicologist's training and experience dictates his or her comfort level for testifying about these other topics. For example, the toxicologist's testimony in the present case illustrated how his unique experience and understanding shaped what he could testify about. *Compare* VRP at 236 (familiar with standardized field sobriety tests), *and* 237 (familiar with horizontal gaze nystagmus), *with* VRP at 242 (training on field sobriety tests was done in an "academic setting" rather than on the roadside), *and* 257 (responding that he would not "do a very good job" at explaining partition ratios because he only has a general understanding of the concept). Expecting defense counsel to prepare an effective cross-examination addressing the variations in toxicologist education and experience for nine potential witnesses when only one will actually testify is unreasonable.

The majority asserts that Salgado-Mendoza's attorney *could* have prepared a cross-examination for all nine witnesses but chose not to; therefore, there was no actual prejudice because counsel did not waste needless hours. Majority at 18. But we cannot demand a criminal defendant go above and beyond to compensate for the State's mismanagement of its expert witnesses. It is not the defendant's responsibility to waste substantial time and resources preparing for additional witnesses that the State never intends to call. If the State wants to call a toxicologist to testify against a criminal defendant, it needs to inform the defendant who that witness will be in accordance with

7

the rules of discovery. That is the State's burden, not one that we should so quickly push onto the defendant.

If we allow underfunding and congestion at the State's toxicology lab to excuse fair trial rights, there will be no inducement for the State to remedy the problem. *See State v. Wake*, 56 Wn. App. 472, 475, 783 P.2d 1131 (1989). The State prosecutes a high volume of DUI trials every year. And it appears that the toxicology lab persistently does not inform the prosecutor which toxicologist will be testifying until the morning of trial. There is no justification for this kind of rampant disregard for discovery obligations because it unfairly shifts the burden onto defendants to either waive their speedy trial right or proceed will ill-prepared counsel. If the State wishes to prosecute crimes, it must put sufficient resources into that prosecution to ensure fairness to the individuals charged. Criminal defendants should not have to bear the burden of the State's inadequate funding.

Because the trial court failed to see the actual prejudice that the State's delayed disclosure forced on Salgado-Mendoza, I would hold that it abused its discretion. Accordingly, I respectfully dissent.

Madsen, J.