# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51321-8-II |
| Respondent, | |
| v. | |
| ERIC SHANTRELL SANDERS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury found Eric S. Sanders guilty of fourth degree assault, attempting to elude a pursuing police vehicle, failure to remain at an injury accident, and vehicular assault. Sanders appeals his convictions and sentence, arguing that (1) the prosecutor committed misconduct during closing arguments, (2) Sanders received ineffective assistance of counsel for failing to object to a jury instruction, (3) insufficient evidence supports the jury's verdict on vehicular assault because the State did not prove "substantial bodily harm," and (4) certain legal financial obligations (LFOs) should be stricken. We affirm Sanders's convictions, but remand to the trial court to strike certain LFOs.

## FACTS

On April 22, 2017, Sanders was involved in a fight with his ex-girlfriend, Megan Wetter. Several neighbors called the police. When Sanders saw the police arrive, he fled in his car. While fleeing in reverse down an alley at approximately 35 to 40 miles per hour, Sanders struck a pickup truck on its driver's side door, deploying all of the truck's air bags, and pushing the

truck roughly 10 feet onto a curb. The passenger in the pickup truck, P.L.,[1] suffered a concussion.

The State charged Sanders with second degree assault,[2] felony harassment,[3] and interfering with reporting domestic violence for the altercation with Wetter.[4] The State also charged Sanders with attempting to elude a pursuing police vehicle,[5] failure to remain at an injury accident,[6] and vehicular assault.[7]

At Sanders's jury trial, Wetter testified to the facts regarding their altercation. P.L. testified regarding the accident and her injuries. Responding police officers testified to the facts above regarding the collision. P.L. was riding in her grandfather's pickup truck. P.L. testified that she had been looking down at directions on her phone, and when she looked up, she saw a car reversing very fast toward the truck. The next thing she remembered was smelling smoke. P.L. was dazed and confused, had difficulty getting the passenger door of the truck open, and had to climb over the center console to get out of the driver's side of the truck.

P.L. testified that she was sore following the accident. On Monday, two days after the accident, P.L. left school early with a bad headache. Tuesday, P.L. also left school early with a

---

[1] Because P.L. is a minor, her initials are used to protect her privacy.

[2] RCW 9A.36.021.

[3] RCW 9A.46.020.

[4] RCW 9A.36.150(1), (3).

[5] RCW 46.61.024(1).

[6] RCW 46.52.020(1), (4)(b).

[7] RCW 46.61.522.

severe headache, and her mother took her to the emergency room. P.L. was given a CAT (computerized axial tomography) scan, which was negative for any bleeding in the brain. The emergency room physician who treated P.L. diagnosed her with a concussion and postconcussive syndrome. P.L. was given medication for nausea and dizziness.

P.L. continued to have headaches, which were generally triggered by light and sound. P.L. also experienced memory problems and difficulty concentrating, particularly on schoolwork. And P.L. was excused from band and physical education at school for two or three months.

The trial court instructed the jury on second degree assault and its lesser included offense of fourth degree assault, interfering with reporting domestic violence, and felony harassment, regarding the events involving Wetter, and also instructed the jury on attempting to elude a pursuing police vehicle, failure to remain at an injury collision, and vehicular assault. The trial court's instruction on the definition of substantial bodily harm stated:

> Substantial bodily harm means bodily injury that involves a temporary but substantial loss of the function of any bodily part or organ.

Clerk's Papers (CP) at 61. Sanders did not object to the instruction.

During closing argument, the prosecutor discussed each element of all six charges and identified the evidence that he believed supported a finding that the element was satisfied. For the vehicular assault charge, the prosecutor argued that the element was satisfied if either P.L. was knocked unconscious during the collision or if she suffered a concussion during the collision. The prosecutor presented PowerPoint slides during its closing, including three slides regarding the reasonable doubt standard. Sanders did not object to the slides, stating, "They

sound okay." 5 Verbatim Report of Proceedings (VRP) (Aug. 28, 2017) at 336. Three of the

slides stated:

**Reasonable Doubt**

- Burden, NOT a barrier
- Reasonable doubt DOES NOT MEAN no doubt
    - Does NOT mean beyond ANY doubt
    - Does NOT mean beyond ALL doubt
    - Does NOT mean to a 100% certainty
    - Does NOT mean beyond a shadow of a doubt

- Beyond a REASONABLE doubt

**Reasonable Doubt**

- THERE IS NO SUCH THING AS A PERFECT TRIAL
    - You could always find something else you wanted to see or something else you wanted to hear

- Question: Do you have enough?
    - <u>NOT</u> Do you wish you had more

**Reasonable Doubt**

- Must use reason
- Consider ALL the evidence as a whole
- ABIDING BELIEF???
    - Then you are satisfied beyond a reasonable doubt

Ex. 17.

During his closing argument, Sanders argued that the State had failed to prove P.L.

suffered substantial bodily harm. In part, Sanders argued,

> Now we are talking about the brain. So the brain here is either a bodily part or an organ, if you think a brain is an organ, and that's for you to decide.

> And now what does a brain do? Well, a brain does, everybody knows, a million things, and it has to be a substantial loss of the function of the brain. And of the million things that your brain helps you do, what did she really lose? Now, let's look at what could be easily proved. If she lost eyesight caused by brain as

4

opposed to a damage to the eye, if she lost the ability to speak, if she couldn't talk or walk or move her arm because of brain damage, all of the millions of things that your brain does, that could be something that if you had evidence of that, that could be a substantial loss.

But what the State wants to put on here is that she may have been knocked silly for a split second, and later it caused her to have headaches and she had some sort of sensitivity to light and/or sound.

Now, if you think that's a substantial loss of your brain, a function of your brain, the defense would submit it's not substantial. Given—if you think about all the things your brain does, that's a pretty minor, little, tiny thing, and the reason that's important is because when you compare this instruction to what it seems to be talking about—and you can talk among yourselves and think about it—is what are they really talking about here that's a loss? And it would apply so easily to the kind of examples that I gave you.

5 VRP (Aug. 28, 2017) at 373-74. In rebuttal, the State responded to Sanders's argument,

The brain does a lot of other functions. It processes light and sounds. That's some of the main functions of the brain, is taking our receptors from our eyes, our nose, our ears and taking that into actual experiences.

Here, that was impaired because every time that her brain was trying to do that function with high-pitch sounds, she gets a headache. Every time she tries to do that with excessive light, she has a headache. And this didn't last for a period of time; it was an extended period of time. This is a substantial loss and the ability of her young brain to work.

And then, obviously, maybe one of the most direct functions of the brain is to be able to concentrate and think and do activity. She couldn't do that in the same way that she could before. That's why she had to be on a modified school assignment because she could no longer concentrate. And she talked about not only that, but it also made her start forgetting things where she would be in the middle of doing something and then she just wouldn't remember what she was doing. And she would have to stop, think, okay, I am in the courtroom, and this is what I was about to be doing. That is a loss of—a substantial loss in the function of the brain.

It doesn't matter that the brain has millions of other functions. If the function of the brain, whichever one of those functions we are talking about is impaired, that's a substantial bodily harm.

No. 51321-8-II

5 VRP (Aug. 28, 2017) at 385-86. Finally, the prosecutor concluded his rebuttal argument by

discussing reasonable doubt:

> So lastly I want to talk about reasonable doubt. And here you'll have Jury Instruction Number 2. This is what talks about reasonable doubt. And it's important when you are talking about reasonable doubt to go back to what I said kind of at the beginning of my closing, which is, when you have questions, because everybody is going to have questions, there is always more things that I could have brought into the trial. You have to see whether or not they go to the elements. If they don't go to the elements, they are not important. If they do go to the elements, question them.
>
> And here, at the end of Instruction 2, it kind of describes to you how you know whether you've met the reasonable doubt. It says—and this is the last line— "If from such consideration you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt." It's not beyond all doubt or any doubt. That such a thing doesn't exist in [sic] modern scientific world. The question is whether or not you, having seen the evidence, having heard the testimony of the witnesses, have an abiding belief that the defendant did in fact strangle Ms. Wetter, and I propose to you that, yes, he did. And the same thing, did he crash into the car and cause a substantial harm to [P.L.]? And I submit, yes, he did.

5 VRP (Aug. 28, 2017) at 388-89.

The jury found Sanders guilty of fourth degree assault, attempting to elude a pursuing

police vehicle, failure to remain at an injury accident, and vehicular assault. The trial court

found that Sanders's high offender score would result in some current offenses going unpunished

and warranted an exceptional sentence. The trial court found that Sanders was indigent, and

imposed the following LFOs: a crime victim assessment, a DNA (deoxyribonucleic acid)

collection fee, a criminal filing fee, and restitution. Sanders appeals.

6

ANALYSIS

A.  *Prosecutorial Misconduct*

Sanders argues that the prosecutor committed misconduct by misstating the law regarding substantial bodily harm and minimizing the burden of proof.  Because Sanders did not object and the prosecutor did not commit flagrant and ill-intentioned misconduct, Sanders has waived the alleged errors regarding prosecutorial misconduct.

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial.  *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).  Prejudice is established by showing a substantial likelihood that the prosecutor's misconduct affected the verdict.  *Emery*, 174 Wn.2d at 760.  We review allegedly improper arguments "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given."  *State v. Russell*, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994).  Where a defendant does not object, he or she is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice.  *Emery*, 174 Wn.2d at 760-61.

Sanders argues that the prosecutor improperly argued that any injury to the brain was substantial bodily harm by stating, "'If the function of the brain, whichever one of those functions we are talking about is impaired, that's a substantial bodily harm.'"  Br. of Appellant (quoting 5 VRP (Aug. 28, 2017) at 386).  But the prosecutor repeatedly argued that P.L.'s concussion symptoms were substantial because of their effect on her daily life and the extended period of time they lasted.  Therefore, taken in context, the prosecutor's statements do not constitute misconduct.

Moreover, Sanders did not object to this statement. Even if this one sentence could be construed as a misstatement of the law, it could have been cured by a timely objection and an instruction to disregard it. Accordingly, Sanders argument fails.

Sanders argues that the prosecutor minimized the State's burden of proof by showing the jury a PowerPoint slide that asked, "Do you have enough?" Br. of Appellant at 14 (emphasis omitted) (quoting Ex. 17). Specifically, Sanders argues that asking "do you have enough?" improperly encouraged the jury to convict Sanders if the State presented prima facie evidence. Br. of Appellant at 15. We hold that the prosecutor's statement was not improper.

In *State v. Anderson*, a factually similar case, the prosecutor argued, "A reasonable doubt arising from the lack of evidence . . . is simply a question of do you have enough." 153 Wn. App. 417, 430, 220 P.3d 1273 (2009). We held these comments to be proper. *Anderson*, 153 Wn. App. at 430. Similarly here, the prosecutor's argument was not improper.

B.      *Ineffective Assistance of Counsel*

Sanders argues that he received ineffective assistance of counsel because counsel did not object to the jury instruction defining substantial bodily harm. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). An ineffective assistance of counsel claim is a mixed question of fact and law that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *Grier*, 171 Wn.2d at

32-33. If the defendant fails to satisfy either prong, the defendant's ineffective assistance of counsel claim fails. *Grier*, 171 Wn.2d at 33.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. We engage in a strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. A defendant may overcome this presumption by showing that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33(quoting *State v. Reichenbach*, 153 Wash.2d 126, 130, 101 P.3d 80 (2004). Recently, our Supreme Court held that the record before this court must be sufficient for us to determine what counsel's reasons for the decision were in order to evaluate whether counsel's reasons were legitimate. *State v. Linville*, 191 Wn.2d 513, 525-26, 423 P.3d 842 (2018). If counsel's reasons for the challenged action are outside the record on appeal, the defendant must bring a separate collateral challenge. *Linville*, 191 Wn.2d at 525-26.

Here, counsel's reasons for failing to object to the jury instruction are not in the record before this court. Therefore, we are unable to determine the legitimacy of counsel's reasons for failing to object to the jury instruction. Accordingly, under *Linville*, Sanders cannot show that his counsel's performance was deficient for failing to object to the instruction.

Furthermore, defense counsel's performance would not be deficient for failing to object to the jury instruction defining substantial bodily injury. RCW 9A.04.110(4)(b) defines substantial bodily harm, providing three separate types of injury that could be found to constitute substantial bodily harm. It defines "substantial bodily harm" as bodily injury which (1) involves a temporary but substantial disfigurement, or (2) causes temporary but substantial loss or

impairment of the function of any bodily part or organ, or (3) causes a fracture of any bodily part. RCW 9A.04.110(4)(b).

Citing *State v. Harris*, Sanders argues that the instruction did not include the necessary statutory language and was therefore improper. 164 Wn. App. 377, 263 P.3d 1276 (2011). He contends, without support, that including the other prongs of substantial bodily harm "would have clarified that the state must prove a considerable and non-fleeting level of harm in order to convict for vehicular assault," and "would have made plain to the jury that a mere *de minimus* injury did not rise to the level" required for conviction. Br. of Appellant at 20.

*Harris* stands for the proposition that a jury instruction must include necessary statutory language. 164 Wn. App. at 387-88. Here, the jury instruction defined substantial bodily harm based on the only type of injury that was relevant or supported by the facts—temporary but substantial loss or impairment of the function of any bodily part or organ. The State did not present any evidence that would support a finding the P.L. suffered any disfigurement or fracture. Therefore, there was no reason to include the alternative types of injuries defined as substantial bodily harm in the jury instruction. The instruction included the necessary statutory language and explained the harm. And because the definition provides three distinct types of qualifying injuries, providing the additional alternatives would not have changed the definition of substantial bodily harm as it related to Sanders. Accordingly, Sanders's defense counsel would have had no reason to object to the jury instruction. Sanders has failed to show that his counsel's performance was deficient and his ineffective assistance of counsel claim should fail.

C.      *Sufficiency of the Evidence*

Sanders argues that the evidence was insufficient to support the jury's verdict finding him guilty of vehicular assault because the State failed to present sufficient evidence to prove P.L. suffered substantial bodily harm. We disagree.

Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence are drawn in favor of the State and interpreted most strongly against the defendant. *Salinas*, 119 Wn.2d at 201. A claim of insufficiency of the evidence "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). Credibility determinations are reserved for the trier of fact and cannot be reviewed on appeal. *Thomas*, 150 Wn.2d at 874.

To prove vehicular assault, the State must prove a person operated a motor vehicle in a reckless manner and caused substantial bodily harm. RCW 46.61.522(1)(a). And, as noted above, an injury causing temporary but substantial loss or impairment of the function of any bodily part or organ. RCW 9A.04.110(4)(b). To be substantial, the injury must demonstrate a considerable degree of harm and must necessarily be greater than merely having some existence. *State v. McKague*, 172 Wn.2d 802, 806, 262 P.3d 1225 (2011). Our Supreme Court has approved of defining "substantial" as "'considerable in amount, value, or worth.'" *McKague*, 172 Wn.2d at 806 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2280 (2002)).

11

Sanders argues that, under *McKague*, P.L.'s concussion symptoms cannot be sufficient evidence to support a finding that she suffered a substantial bodily injury. However, *McKague* supports the State's position here. In *McKague*, the court stated that "[the victim's] concussion, which caused him such dizziness that he was unable to stand for a time, was sufficient to allow the jury to find that he had suffered a temporary but substantial impairment of a body part or an organ's function." *McKague*, 172 Wn.2d at 806.[8]

Here, viewing the evidence in the light most favorable to the State, P.L. suffered a concussion and postconcussive syndrome that cause severe headaches and sensitivity to light and sound that lasted for several months. P.L. was also unable to attend a full day of school for almost three months. And P.L. suffered memory problems and difficulty concentrating. P.L.'s symptoms are sufficient to support the jury's finding that she suffered substantial bodily harm as a result of the concussion and postconcussive syndrome.

D.     *LFOs*

In a supplemental brief, Sanders argues that we should reverse the trial court's imposition of the criminal filing fee and DNA collection fee. The State concedes that these LFOs should be stricken. We agree.

Recent legislation prohibits trial courts from imposing on indigent defendants criminal filing fees or the DNA collection fee if the offender's DNA has already been collected as the

---

[8] Sanders seems to argue that the Supreme Court's holding that the evidence was sufficient to support the jury's verdict was based on the concussion combined with lacerations and facial bruising and swelling. But the court clearly stated that the lacerations and facial bruising and swelling constituted substantial but temporary disfigurement. *McKague*, 172 Wn.2d at 806. The concussion independently supported a finding that the victim suffered a temporary but substantial impairment. *McKague*, 172 Wn.2d at 806.

result of a prior conviction. RCW 36.18.020(2)(h); RCW 43.43.7541. The recent legislation applies prospectively to defendants like Sanders, whose cases were pending appellate review and were not yet final when the legislation was enacted. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

The trial court found Sanders indigent. The State notes that Sanders's DNA has been previously collected and is on file with the Washington State Patrol Crime Laboratory. Therefore, we remand to the trial court to strike the criminal filing fee and DNA collection fee. We affirm, but remand to the trial court to strike the criminal filing fee and DNA collection fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Glasgow, J.

Cruser, J.