# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52789-8-II |
| Respondent, | |
| v. | |
| MARK MICHAEL STREDICKE, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. – Mark Michael Stredicke appeals his jury trial conviction for second degree assault and the interest fee provision in his judgment and sentence.[1] He argues that the evidence was insufficient to prove that (1) he had the specific intent to inflict bodily injury or to create apprehension and fear of bodily injury, or (2) the assault victim was placed in apprehension and fear of bodily injury. Because the evidence, taken in the light most favorable to the State, supports these elements, we affirm the conviction. He further argues that the trial court erred when it imposed interest on his legal financial obligations (LFOs). We agree, and remand for the trial court to strike the interest provision in the judgment and sentence.

---

[1] The jury also convicted Stredicke of attempting to elude a pursuing police vehicle, but he does not challenge that conviction.

FACTS

I. BACKGROUND

On September 25, 2017, at about 4:30 AM, Pierce County Deputy Sheriffs Brendon Ossman and Nick Jankens were stopped at an intersection in their patrol car when Stredicke drove his vehicle through the intersection "at a high rate of speed." 2 Verbatim Report of Proceedings (VRP) at 186. The deputies activated the patrol car's lights and siren and pursued Stredicke. For most of the pursuit, Stredicke drove in the oncoming lane of traffic.

After observing Stredicke reaching speeds of up to 120 miles per hour, Jankens, who was driving the patrol car, attempted to stop Stredicke's vehicle by executing a PIT[2] maneuver, which required Jankens to bring the patrol car into a controlled contact with the side of Stredicke's vehicle. When the patrol car was within a few feet of the side of Stredicke's vehicle and travelling approximately 70 miles per hour, Stredicke's vehicle "swerved directly" at the patrol car, coming within less than a foot from the patrol car. 3 VRP at 337-38.

Jankens "hit the brakes" "as hard as he could," throwing the deputies forward against their seatbelts, to avoid colliding with Stredicke's vehicle. 2 VRP at 216. The deputies did not observe any obstacles in the roadway when Stredicke swerved toward the patrol car.

About eight minutes into the pursuit, Stredicke lost control of his vehicle and the vehicle ended up in a ravine. Stredicke attempted to flee on foot, but he was apprehended by other deputies.

---

[2] The pursuit intervention technique, commonly known as the PIT maneuver, is "a technique where a patrol vehicle will come in contact with the rear end of a vehicle and they will touch either the left or the right side and perform a quarter-turn motion into the vehicle, which . . . cause[s] the vehicle to spin out of control and usually stalls the engine." 2 VRP at 237. When performed correctly, "there's absolutely no damage to any of the vehicles, and the vehicle would come to a complete stop." *Id.* at 241.

The State charged Stredicke with two counts of second degree assault for the assaults of Ossman and Jankens and one count of attempting to elude a pursuing police vehicle. The State alleged that Stredicke had assaulted the officers with a deadly weapon or had assaulted the officers with intent to commit a felony. The case proceeded to a jury trial.

## II. PROCEDURE

### A. TRIAL TESTIMONY

Ossman and Jankens testified for the State as described above. Stredicke did not present any witnesses.

In addition to testifying about the pursuit, Ossman testified that when Stredicke's vehicle swerved at the patrol car, he (Ossman) thought they were going to be hit and he "was a little shocked." *Id.* at 216. He opined that if Stredicke's vehicle had hit the patrol car, "[t]here was a pretty good chance that [they] would have lost traction," "gone off the roadway," and been "very injured." *Id.* at 217.

On cross-examination, Ossman admitted that Stredicke's vehicle's movement was possibly consistent with an attempt to get back into the proper lane and that the patrol car was possibly in Stredicke's blind spot. But Ossman further testified that when Stredicke's vehicle swerved toward the patrol car, the patrol car's lights and siren were on.

Jankens characterized Stredicke's vehicle's swerving as "sudden," "fast[,] and aggressive." 3 VRP at 343. Jankens further testified that he was "a little surprised" when Stredicke swerved and that he (Jankens) thought they were going to crash. *Id.* at 340. But Jankens "was a little more focused on keeping up with [Stredicke]." *Id.* at 341.

3

Jankens opined that if they had crashed, the deputies probably would have been injured "at the very least." *Id.* at 341. He admitted that the patrol car could have been in Stredicke's blind spot, but Jankens testified that the patrol car's presence would have been obvious because of the lights and siren.

## B. JURY INSTRUCTIONS, VERDICT, AND SENTENCING

The to-convict jury instruction for Count I required the jury to find that Stredicke assaulted Jankens either with a deadly weapon or with intent to commit attempted eluding. The jury instruction stated that the jurors did not need to be unanimous as to which of the alternatives had been proved, "as long as each juror [found] that either [alternative] ha[d] been proved beyond a reasonable doubt." Clerk's Papers (CP) at 29 (Jury Instruction 11).

The jury instructions also defined assault:

> An assault is an act done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.
> An assault is also an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

*Id.* at 33 (Jury Instruction 15).

The jury found Stredicke guilty of the second degree assault of Jankens and of attempting to elude a pursing police vehicle.[3] The jury also found Stredicke not guilty of the second degree assault of Ossman.

---

[3] The jury's verdict did not disclose whether it found Stredicke guilty of assault with a deadly weapon or whether it found him guilty of assault with intent to commit a felony. Nor did the verdict disclose whether it found Stredicke guilty of assault with intent to inflict bodily injury or assault with intent to create in another apprehension and fear of bodily injury.

At sentencing, the trial court imposed a $500 crime victim assessment. The judgment and sentence stated that the financial obligations would bear interest from the date of the judgment until they were paid in full. The judgment and sentence did not impose any restitution, but it stated that a restitution hearing would be set by the prosecutor. There is nothing in the record regarding whether the trial court later imposed any restitution.

Stredicke appeals his second degree assault conviction and the interest provision in his judgment and sentence.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Stredicke first argues that the evidence was insufficient to prove that (1) he intended to inflict bodily injury (2) he intended to create apprehension and fear of bodily injury, or (3) his actions in fact created in Jankens a reasonable apprehension and imminent fear of bodily injury. We disagree.

### A. LEGAL PRINCIPLES

Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.* at 201. "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.* at 201.

"In determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than direct evidence." *State v. Delmarter*, 94 Wn.2d 634, 638, 618

P.2d 99 (1980). We defer to the finder of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). And "the specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability." *Delmarter*, 94 Wn.2d at 638.

Washington courts use the common law definition of assault, which includes three ways to commit an assault: "(1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm." *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). The third method of committing assault, apprehension of harm, has two prongs; the State must prove that the defendant (1) acted with intent to create apprehension and fear of bodily injury in the victim and, (2) in fact created a reasonable apprehension of an imminent fear of bodily harm in the victim. *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995). Under the jury instructions in this case, to prove second degree assault the State had to prove that Stredicke (1) acted with intent to inflict bodily injury on Jankens or (2) committed the act with intent to create apprehension and fear of bodily injury in Jankens and, in fact, created a reasonable apprehension an imminent fear of bodily injury in Jankens.[4]

B. INTENT ELEMENTS

Stredicke argues that "there was not sufficient evidence to 'plainly indicate[ ]' that Mr. Stredicke intended to harm Deputy Jankens or to cause Deputy Jankens to fear bodily harm 'as a matter of logical probability,'" because "there was no evidence, either direct or circumstantial, presented concerning Mr. Stredicke's intent to assault the deputies at all." Br. of Appellant at 9.

---

[4] The State did not assert that Stredicke had committed an actual battery.

Stredicke contends that the aggressiveness of his driving could instead be attributed to the high rate of speed at which he was driving and that, at most, the evidence shows that he intentionally moved the steering wheel, which does not establish intent to cause bodily harm or intent to cause apprehension and fear of bodily harm.

RCW 9A.08.010(1)(a) provides that "[a] person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." Taking the evidence in the light most favorable to the State, the jury could have reasonably concluded that the circumstantial evidence demonstrated that Stredicke intentionally swerved toward the patrol car in an attempt to either inflict bodily injury or to create apprehension and fear of bodily injury so that the deputies would end the pursuit or would be unable to perform the PIT maneuver. The swerve was "sudden," "fast[,] and aggressive," suggesting that it was more than accidental. 3 VRP at 343. The timing of the swerve when there was nothing in the roadway for Stredicke to avoid was suspect. And it is highly unlikely that Stredicke did not realize that the patrol car was next to his vehicle because of the lights and siren. These facts suggest criminal intent as a matter of logical probability. Accordingly, we hold that there was sufficient evidence to prove that Stredicke intended to inflict bodily injury or intended to create apprehension and fear of bodily injury when he swerved toward the patrol car. Accordingly, this sufficiency argument fails.

C. APPREHENSION AND FEAR OF BODILY INJURY ELEMENT

Stredicke also contends that there was insufficient evidence that Jankens was placed in apprehension and fear of bodily injury because Jankens testified only that he was "a little

7

surprised" when Stredicke swerved and that he (Jankens) remained focused on maintaining the pursuit.[5] *Id.* at 340. We disagree.

Jankens testified that when Stredicke's vehicle swerved, he (Jankens) believed they were going to crash and that if they had crashed, the deputies would have been injured "at the very least." *Id.* at 341. Taken in the light most favorable to the State, this testimony clearly establishes that Jankens was placed in apprehension and fear of bodily injury. That Jankens also had to focus on avoiding a collision and maintaining the pursuit does not mean that Jankens could not also fear bodily injury. Accordingly, this sufficiency argument also fails.[6]

## II. INTEREST PROVISION

Stredicke next argues that the trial court erred when it included a provision in the judgment and sentence that imposed interest on the LFOs.[7] We agree.

---

[5] Inexplicably, Stredicke raises this argument only in a footnote and does not include it in his statement of the issues pertaining to his assignments of error. The better practice is to raise and address issues in the body of the brief rather than a footnote so there is no ambiguity as to whether the appellant is seeking review of that issue. *See State v. Johnson*, 69 Wn. App. 189, 194 n. 4, 847 P.2d 960 (1993). Although there is authority allowing us to refuse to address issues raised solely in a footnote, we address this issue because it is adequately presented for our review in the footnote. *State v. Harris*, 164 Wn. App. 377, 389 n. 7, 263 P.3d 1276 (2011); *Johnson*, 69 Wn. App. at 194 n. 4.

[6] In a footnote, Stredicke notes that the verdicts on the two counts of second degree assault were inconsistent, suggesting that the jury found the evidence insufficient to establish second degree assault. But "the simple fact of verdict inconsistency does not require that we vacate a guilty verdict" if the evidence is sufficient to support the conviction. *State v. Goins*, 151 Wn.2d 728, 738, 92 P.3d 181 (2004).

[7] We note that Stredicke cites to RCW 3.50.100(4)(b). RCW 3.50.100 applies to matters in the district court. RCW 3.50.100(1). Because this matter was before the superior court, RCW 3.50.100 does not apply here.

"As of June 7, 2018, no interest shall accrue on nonrestitution [LFOs]." RWC 10.82.090(1). Stredicke was sentenced on December 10, 2018, well after this provision took effect. Accordingly, we remand to the trial court to strike the interest provision from the judgment and sentence to the extent it applies to nonrestitution LFOs.

Because the evidence, taken in the light most favorable to the State, supports the conviction for second degree assault, we affirm the conviction. But we remand for the trial court to strike the interest provision in the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

LEE, C.J.

GLASGOW, J.